## Willis v. LaFayette-Phoenix Garage Company, Inc.

(Decided March 28, 1924.)

### Appeal from Fayette Circuit Court.

1. Statutes—Statute Concerning Lien of Garage Keeper Not Special Legislation.—Ky. Stats., sections 2739h-1, 2739h-2, giving garage keeper lien and providing for sale of automobile, are not invalid as special legislation under Constitution, section 59, subsection 22.

2. Livery Stable and Garage Keepers—Statute Giving Lien Declaratory of Common Law.—Ky. Stats., section 2739h-1, giving a lien on an automobile for repairs and accessories, is merely declaratory of the common law.

3. Constitutional Law—"Due Process of Law" Defined.—"Due process of law" is any legal procedure enforced by public authority, whether sanctioned by age or custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice.

4. Constitutional Law—Livery Stable and Garage Keepers—Statute Authorizing Enforcement of Lien on Vehicle Without Personal Notice Constitutional.—Ky. Stats., section 2739h-2 providing for sale of automobile by one having lien for repairs and accessories, without personal notice upon the owner, is not invalid as denying

due process of law, under Ky. Constitution, sections 2, 11, and Const. U. S. Amend. 14.

5. Livery Stable and Garage Keepers—Contract Made in Contemplation of Lien Statute.—Every contract made after the taking effect of a statute must be held to have been made in contemplation thereof, and to embrace and to take into consideration the law as prescribed by such statutes, and hence one who left an automobile with a garage keeper for repairs after the passage of Ky. Stats., sections 2739h-1, 2739h-2, must be deemed to have agreed to allow the garage keeper to sell the car as provided in such statutes on nonpayment of charges.

6. Livery Stable and Garage Keepers—Method of Enforcing Lien for Storage of Vehicle Stated.—A garage keeper, though he has a lien for storage on a car, has no right to sell it in the manner provided by Ky. Stats., section 2739h-2, but having also a lien for repairs and accessories he may sell the car and subject the proceeds to payment of the storage charges, or at least retain them until his lien for storage is satisfied.

7. Livery Stable and Garage Keepers—Lien of Garage Keeper Held Superior to Attachment.—Lien of a garage keeper on a car for repairs, accessories, and storage was superior to lien of attachment levied on the car after the lien of the garage keeper was in force.

JAMES PARK, for appellant.

SMITH & REYNOLDS and W. E. DARRAGH for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

This appeal questions the constitutionality of the act of the General Assembly of 1918, now sections 2739h-1 and 2, providing a lien on motor vehicles for service on or work done, or for accessories or supplies furnished by a garage, mechanic, repairman, individuals or corporations, on the ground that the procedure prescribed for the sale of automobiles to satisfy such claims for repairs and accessories does not amount to due process of law and that such a sale as provided for by the act is a taking of private property without due process of law— without giving the owner a day in court.

On December 17, 1920, appellant Willis left his automobile at the garage of appellee company in Lexington to be painted, repaired and stored. The car was forthwith painted, repaired and stored by the garage company. It remained in the garage from December 17, 1920, until some time after April 15, 1922, more than sixteen months, at which time the garage company, proceeding

under section 2739h-2, Kentucky Statutes, sold the car at public auction to satisfy the charges for storage and repairs, having first advertised the sale for six days in a daily newspaper of general circulation, published in the city of Lexington, as required by the said section of the statutes. The advertisement was published in the Lexington Leader for six days before the sale.

The sale was by public auction to the highest and best bidder, the car bringing $245.00. The charges of the garage were $61.12, for repairs $148.00, and $9.53 interest. In the meantime and on April 5, 1921, one Dunlap sued out a general order of attachment against the property of appellant Willis, and this was levied upon his car in the garage on the same day, and this attachment lien, if any there was, had not been set aside or discharged at the time of the sale of the machine as aforesaid.

The act of 1918, being sections 2739h-1 and 2739h-2, Kentucky Statutes, under which the garage sold the car, reads as follows:

> 2739h-1. "All persons individuals or corporations in conducting the business of selling, repairing, furnishing accessories or supplies for motor vehicles shall have a lien on such motor vehicles for reasonable or agreed charges for repairs, work done, accessories or supplies furnished for or on machines, and for storing or keeping said machine, and such persons, individuals or corporation may detain all motor vehicles in their possession on which work has been done by them until the reasonable or agreed charges therefor have been paid.
>
> "The lien provided for in this act shall not be lost by the removal of such motor vehicle from the garage, shop or premises of the person, individual or corporation performing labor, repairing, furnishing accessories or supplies therefor; provided, however, such person, individual or corporation shall assert such lien within six months by filing in the office of the county clerk of said county a statement showing the amount of materials furnished or labor performed on said car and the cost of same. Said statement to be filed in the same manner as the lien of mechanics and materialmen, after the removal of such vehicle, unless the owner thereof shall consent to an

additional extension of time as provided for in this act, in which event the lien shall extend for such a length of time as the parties may agree upon, reduced to writing and signed by the parties thereto."

Section 2739h-2. "Sale of Vehicle for Charges, After Thirty Days; Newspaper Advertisement.— Any motor vehicle remaining in the possession of a person, individual or corporation on which repairs have been made, labor performed, accessories or supplies furnished by such person, individual or corporation for more than thirty days may be sold to pay said charges, but the person, individual or corporation to whom the charges are payable, shall first advertise said vehicle for sale for six days before the sale is made, in some newspaper of general circulation in the town, city or county where the materials were furnished or labor performed on such motor vehicles."

Appellant says that section 2738h-2 is unconstitutional, being violative of both the 2nd and 11th sections of the Constitution of Kentucky and the 14th amendment of the Constitution of the United States. These sections read:

Section 2. "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

Section 11. "In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained."

The 14th amendment, section 1, Federal Constitution, in part reads:

"Nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It is also insisted by appellant that the second section of the act above quoted deprives the owner of his property without due process of law, as notice to party whose property is to be sold is necessary in order to constitute due process of law; and in support of this proposition we are cited the following cases and texts: Hagar v. Reclamation District, 111 U. S. 701; Murray v. Hoboken Land & Development Co., 18 How. 272; Louisville v. Cochran, 82 Ky. 22; Varden v. Mount, 78 Ky. 86; City of Paducah v. Ragsdale, 122 Ky. 425; Garnett v. Jennings, 22 S. W. 382; Griffith v. Gross, 108 Ky. 160; 31 Cyc. 788-862, 876 and note. Appellant also attacks the act as special legislation and relies upon the following authority: Kentucky Constitution, section 59, subsection 22; Jasen v. Wilton E. Wilcox Lumber Co., 295 Ill. 294; Thurber Art Gallery v. Reinzi, 297 Ill. 272; 130 N. E. 747.

The act divides itself into three parts; the first grammatical paragraph gives to all persons, individuals and corporations conducting the business of selling, repairing and furnishing accessories and supplies for motor vehicles a lien on the car for the reasonable or agreed charges for repairs and accessories had or supplied for or on the machine, as well as for storing and keeping said machine, and allows the keeper of the garage and repair shop to detain all motor vehicles in his possession until the reasonable or agreed charges due the garage keeper have been paid. The second grammatical section of the act provides that the lien granted by the first paragraph shall not be lost by the removal of such motor vehicle from the garage or premises, provided the garage keeper shall assert such lien within six months by filing in the office of the clerk of the county court a statement showing the amount of materials furnished or labor performed on the car and the cost of same, in the same manner as mechanic and materialmen liens are now required to be filed. With this second grammatical paragraph we will have no cause to deal in this opinion except in a general way.

The third paragraph of the act, being section 2739h-2, confers upon the garage keeper, whether an individual or a corporation, making repairs, but not for storage, the right to sell the machine so repaired on which accessories have been supplied or work done, to pay the reasonable or agreed charge of the garage, after the car has been left in the keeping of the garage for more than thirty days without payment of the charges; and after the car has been advertised for sale six days in some paper of general circulation in the town or city where the materials were furnished or labor performed on the vehicles. This last paragraph is the one of which appellant chiefly complains.

We think that the first section of the act, which merely gives a lien to the garage for repairs, accessories and storage, is but an expression of the common law. Before the enactment of the statutes on the subject mechanics and repairmen could retain a machine, whether an automobile or not, for the reasonable charges incurred in making repairs thereon at the instance of the owner or his representative, and this part of the act does not enlarge the common law but merely reasserts it. In considering this phase of a similar statute of New York for the protection of the keepers of garages the court said: "We thus find that the statute, so far as the repairs are concerned, is merely declaratory of these common law rights. The principles of the common law therefore govern, and irrespective of the statute the defendant repair company's lien must be held superior to that of the plaintiff owner." 193 N. Y. S. 238. The New Jersey court in the recent case of Crucible Steel Co. v. Pollack Tye & Rubber Co., 104 Atl. 324, in discussing a statute very similar to the one now under consideration said:

"Reading sections 1 and 2 of the act under consideration together, it is clear from their language that the authority conferred upon the lienor to retain said motor vehicle at any time it is lawfully in his possession until such sum is paid includes a motor vehicle which the lienor has allowed to go out of his possession, and subsequently retakes to enforce his lien. It is to be observed that the statute is in some respects declaratory of the common law right of a lien. It extends this right of lien to other conditions in business life than those that existed at common

law. Thus, for example, it gives the garage keeper a lien for the storing and maintaining of motor vehicles, a present popular means of conveyance unknown to the common law and which has in a great measure supplanted the horse and wagon and revolutionized the mode of transportation. It gives a right of lien for furnishing gasoline, accessories and other supplies for motor vehicles for which no right of lien could have properly existed at common law. The innovation which the statute makes in the common law is neither startling nor novel in so far as it enlarges and extends the right of lien to conditions not included at common law, but is in line with the natural progress of the law to meet necessities arising from new business conditions; and the wisdom of this species of legislation is not a court question, but is peculiarly within the province of the lawmaking power to determine."

"The statute in question merely extends to all lienors the right of sale, which has always existed at common law in a pledge of personal property, with certain added provisions as to notice to the owner inserted for his protection. They no more constitute a taking of property without due process of law than would a similar sale by a pledgee under the common law, where the amount for which the property was pledged was in dispute, and the rights and remedies in such a case would be identical with those in the case at bar." Dininny v. Reavis, et al., 165 N. Y. S. 98.

"A lien being merely the right to retain possession of certain property until a debt or claim is satisfied in the absence of statute, a suit at law for the retention or recovery of possession is the only extent to which such lien is enforceable. As to other liens of which a court of law may have jurisdiction, it can order a sale of the property only upon execution." 25 Cyc. 681.

"Equity has general jurisdiction of liens, and in the absence of statutory provisions will foreclose them in obedience to the well settled rules of equitable jurisprudence. Unless the law has provided another mode of enforcement, a court of equity is the only proper tribunal for enforcing an equitable lien, regardless of what rights the lienor may have

in a court of law.  A court of equity is also the proper tribunal in which to enforce statutory liens where the statutes provide no method of enforcement except where the lien is in the nature of a pledge and possession accompanies the lien.  But as a general rule a court of equity has no jurisdiction to enforce payment of common law liens or of statutory liens for which a method of enforcement is provided, unless jurisdiction has been acquired for other purposes, nor will equity interfere to foreclose a lien when there is a full and complete remedy at law.'' 25 Cyc., 681 and 682.

So far as we are able to discern the lien given the garage keeper on a vehicle repaired, accessoried or stored at the instance of the owner is not different in principle and operation from the general mechanic's lien statutes which are recognized and upheld by courts everywhere.

It is earnestly insisted by appellant, however, that he has been deprived of his property without due process of law, because he had no actual notice of the sale of his car until after the sale, although the notice was printed in the newspaper as required by the act, and reads:

"AUCTION SALE OF AUTOMOBILE

"We will sell at our garage in Lexington, Kentucky, on Saturday, April 15th, 1922, at or about the hour of ten o'clock a. m., at public auction, to the highest and best bidder, the following described motor vehicle:

"A five-passenger Chandler Touring Car Automobile, model 1918, Serial No. 48915, and belonging to R. D. Willis.

"Terms, cash; said sale being made for the purpose of satisfying our claim for labor, repairs, accessories and storage applied on and furnished for said automobile in pursuance to the provisions of the Kentucky Statutes governing such matters.

"LAFAYETTE-PHOENIX GARAGE,
(Incorporated.)''

He argues that before a sale could be made of his car to satisfy the lien claim of the garage an action in

equity would be necessary to adjudge the debt, lien and sale and until such a judgment was entered in a court of competent jurisdiction in an action to which all interested parties in the ownership of the property were litigants the sale was invalid, and he was entitled to replevy his car, or to waive the tort and sue for its value as he did in this case. Many efforts have been made to define "due process of law," with varying success. Justice Story, a great constitutional lawyer, said that it is law in its regular course of administration through courts of justice. This definition, however, has in recent years been enlarged upon. The Supreme Court of the United States has said that due process of law is any legal procedure enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice. Hurtado v. California, 110 U. S. 516.

Judge Cooley said: "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

In Corpus Juris, vol. 12, page 1188, it is said: "Due process of law is synonymous with 'law of the land,' 'due course of law,' 'due course of law of the land,' and 'course of the common law.'"

"As applied to legislative enactments," says 12 Corpus Juris, p. 1090, "it means statutes that are general in their operation, and that affect the rights of all alike, and not a special act of the legislature passed to affect the rights of an individual against his will, and in a way in which the same rights of other persons are not affected by existing laws. Certainly 'due process of law,' or 'the law of the land,' does not mean merely an act of the legislature, for such a construction would abrogate all restrictions on legislative power." As said by some of the courts: "Due process of law means a law which hears before it condemns, which proceeds on inquiry and renders judgment only after trial; law in its regular course of administration through courts of justice; a course of proceeding according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of pri-

vate rights. A prosecution or suit instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt, or determining the title to property, an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce and protect his rights, . . . a trial or proceeding according to the course and usage of the common law."

Accepting the foregoing general definitions of "due process of law," may we not say that when a mechanic makes repairs upon machinery in his possession at the instance of the ower and thereafter enforces his lien against the property in a court of equity that due process had been had? This is due process of law merely because it is the usual course of the common law. This right of the lienor has in many instances been expanded and enlarged so that the proceeding is one in exact accordance with the established rule once known as the common law. But any proceeding which conforms to the regular course of the common law or which proceeds in the way and manner directed by a statute general in its terms, to the enforcement of a mechanic's lien upon personal property, is and must be regarded and held to be due process of law in that particular case. The constitutional provisions to which appellant refers in brief did not attempt to define "due process of law;" nor to state even in general terms how one may be brought before the court or apprised of a legal proceeding affecting his property rights. While we have in most cases required the execution of a summons upon a defendant or lienee in order to give the court jurisdiction to render judgment, we might have by a legislative enactment provided, as it seems to us, for the taking effect of jurisdiction upon the defendant and his property by some other manner of notice, such as the service of written notice of the time and place of the hearing; or by publication in a newspaper for a reasonable time, of the time and place of the hearing.

Aside from this we think that every contract made after the taking effect of a statute must be held to have been made in contemplation thereof, and to embrace and to take into consideration the law as pre-existing and recognized by such statutes. The act in question was on the statute books at the time appellant Willis left his car in the appellee's garage to be painted, repaired and

stored, and we know of no reason why one might not, if he desired to do so, enter into an arrangement or agreement with a garage keeper by which the latter should paint, repair and store his car, and to have and hold a lien thereon for the reasonable cost thereof, and in case such charges were unpaid within thirty (30) days after they became due, to allow the garage keeper to sell the car and apply the proceeds, or so much thereof as was reasonably necessary to the satisfaction of the legitimate charges thereon.

In discussing a kindred question, we said in Griffith v. Gross, 108 Ky. 162:

"Our statutory proceeding in case of distress is less rigorous than the common law mode. The law-making power, which created the lien in favor of the farmer on cattle grazed by him, had clearly the right to prescribe how this lien might be enforced. At common law all such liens were enforced by the party in whose favor they existed without any legal process; and while it is true that by statute in this state liens are now required ordinarily to be foreclosed by judicial proceedings, this statute, like all others, is subject to the will of the legislature, and in creating the lien for grazing stock it had to determine what was the best way to enforce it. Ordinarily judicial foreclosure would have been attended with too much cost and delay, and so some summary process was necessary. By section 2310, Kentucky Statutes, the defendant in the warrant may replevy the debt for three months, or by section 653 of the Code of Civil Practice he may give bond securing the payment of the amount due, and thereby discharge the levy. We fail to see that these provisions do not fully protect the rights of the owner, or that any constitutional guaranty is thereby denied him, for the reason that, when he puts his stock out to be grazed, he did so with full knowledge, not only that a lien was thereby created on them, but that it might be enforced as provided in the statutes. If a pledge be not redeemed, the pledgee may sell it; and it has never been supposed that this procedure violates any constitutional right of the pledgor. We are unable to see any solid distinction between this and the statutory lien in the case before us, when en-

forced in the manner pointed out by the statutes, with reference to which both parties contracted when the stock was put out to be grazed.''

While we are convinced that the entire statute quoted above is clearly within constitutional limits, we are equally certain that no sale can be had by the garage keeper of an automobile upon which repairs have been made or accessories furnished, and storage provided, except for that part which resulted from the making of repairs or the furnishing of accessories, and not for storage. The terms of the act so provide. The garage keeper has a lien for his storage; but subsection 2 of the act only provides that a sale may be had by the garage of the car on which repairs had been made, labor performed or accessories or supplies furnished by it for these things alone. The garage had the right and power, under subsection 2, to advertise the automobile for sale and to carry out the sale by public auction in the manner it did, for the satisfaction of its claim for repairs and accessories, but it had no right to sell the machine for the rentals due for storage. The power which the garage company had to make a sale was conferred by statute and it must be exercised within the purview of the act and not otherwise. Inasmuch as the garage company had a right to sell the property and as it was necessary to sell the whole car and not merely enough thereof to pay the claim of the garage company for repairs and accessories the sale was valid. It is insisted, however, that the greater part of the claim for which the sale of the car was made was for storage only and that the lower court erred in not allowing appellant Willis to recover at least the amount of the proceeds of the sale which were in excess of the charges due the garage company for repairs and accessories. This contention we regard as unsound, for it must be remembered that before the sale was made the garage company had a lien under the statutes we are construing not only for repairs and accessories but for its reasonable charges for storage of the automobile enforceable in equity. For such a lien the garage had a right to subject the proceeds arising from the sale of the automobile, or at least the garage company was not bound to pay to appellant such moneys until its lien for storage was satisfied.

It is further insisted that the attachment lien created by the levy of the general order of attachment on the automobile prior to its sale was prior and superior to the claim of appellee garage company, but this, it seems, both upon reason and authority, cannot be maintained. The lien in favor of the garage company was in force long before the attachment was levied. That lien was not dissolved or suspended by the levy of the attachment. The attachment lien was therefore subservient to the mechanic's lien which was in force before and at the time the attachment was sued out. So between the owner of the car and the attaching creditor, there are equities which we need not here consider.

In overruling the demurrer of appellant to the rejoinder of appellee the trial court correctly adjudged the law.

For the reasons indicated the judgment is affirmed. Whole court sitting.