Judith T. PEASE and through her as next of friend, her minor daughter, Kelly Jo Lambert, Plaintiffs,

v.

HAVELOCK NATIONAL BANK et al., Defendants.

No. CV72-L-288.

United States District Court, D. Nebraska.

Dec. 5, 1972.

H. Bruce Hamilton, Legal Aid Society of Lincoln, Lincoln, Neb., for plaintiffs.

Marilyn B. Hutchinson, Lincoln, Neb., for defendants.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

The single issue is whether this court has subject matter jurisdiction over a claim that a debtor's right to due process has been denied by the self-help repossession of an automobile by a creditor.

Judith Pease, an AFDC recipient, purchased a 1972 model automobile. She made a nominal down payment and contracted to pay the remaining amount due in 36 equal monthly installments of $92.99. The contract was assigned to the Havelock National Bank, which filed a financing statement, showing a security interest in the automobile and in the plaintiff's furniture, appliances and other personal goods. Mrs. Pease, because of financial difficulties, has had trouble meeting her scheduled payments, and five months after the sale two employees of the bank, the defendants Scheinost and Harner, in the course of their employment went to the Pease residence to repossess the automobile. According to the complaint, Scheinost and Harner asked the plaintiff "if she wasn't a little slow in her payments" and before she could answer, Harner "grabbed the keys from Plaintiff's hand, twisting her wrist" and drove the car away. The plaintiff requests damages for injuries to her wrist, mental anguish and fright, and asks a declaration of the unconstitutionality of the provision of the Uniform Commercial Code, which permits the repossession of secured goods without judicial process, if repossession can be done without a breach of the peace.[1]

---

1. Section 9-503 states:
  "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment

Invocation of the jurisdiction of this court is sought under 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202.

█ The last two sections, 2201 and 2202, which relate to declaratory judgments, are not a grant of jurisdiction to the United States district courts. Maintenance of an action for a declaratory judgment depends upon the existence of a ground for jurisdiction independent of the declaratory judgment statutes. See Maryland Casualty Company v. Rosen, 445 F.2d 1012 (C.A.2nd Cir. 1971).

█ When, as here, the claim is based on the Fourteenth Amendment, sections 1331 and 1343(3) and (4) differ as to the necessity of a jurisdictional amount, but are alike in requiring the presence of state action. Both rest, absent allegations of federal encroachment, upon the Fourteenth Amendment, which is limited to proscriptions upon states. That amendment declares, "nor shall any State deprive any person of life, liberty, or property, without due process of law". In the context of the present case it is not the State of Nebraska which has deprived the plaintiff of her life, liberty, or property, and, accordingly, this court has no jurisdiction over the controversy.

█ The distinction between a state's acting and an individual's acting is a genuine one. "Individual invasion of individual rights is not the subject-matter of the [Fourteenth] amendment." Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). To determine whether state action exists in a particular setting it is necessary to examine relevant indices of state involvement, for only by "sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking

Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

There is no factual allegation that any of the defendants were acting in any official capacity for the state. Neither is it urged that they were acting under compulsion of state law. The case thus differs from Peterson v. Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963), from which it may be said that when a private person does an act specifically commanded by the state, his act is the act of the state. In the present case the acts were, at most, permitted,[2] not commanded, by the state.

It is apparent that the plaintiff seeks to bring this case within the holding of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which held the Florida pre-judgment replevin statute to be invalid. Under that statute an individual could obtain judicial process for the seizure of disputed goods by an ex parte application accompanied by a bond in the amount double the value of the goods. After the writ was issued and the goods seized, the goods could be recovered if within three days the party from whom the goods were seized posted a counter-bond for double the value of the goods. This procedure was held invalid, as failing to conform to the Fourteenth Amendment's due process requirement.

Although on the facts alleged in the complaint the present case is similar factually to *Fuentes*, one substantial distinction compels the conclusion that the complaint must be dismissed for want of state action.

Nebraska's statute, § 9–503 of the Uniform Commercial Code, provides that the secured party may regain possession of secured goods upon default with or without process. In this case the de-

---

unusable, and may dispose of collateral on the debtor's premises under section 9–504.

Section 9–504 provides for the disposition of the collateral after the secured party has taken possession.

2. There is doubt that the acts, as alleged, were even permitted by the statute. The complaint indicates that the repossession without judicial process was forcible, whereas the statute authorizes such repossession if it can be done without "breach of the peace."

fendants acted without process. Had they chosen to obtain judicial process, the procedures used in obtaining that process would have had to conform to due process in accordance with the principles of *Fuentes*. One armed with judicial process or a state officer or agent executing that process is cloaked with the authority of the state. That authority adds compulsion to the procedures used in recovering the goods named in the writ and allows a seizure of those goods in spite of any resistance the individual in possession of the goods may put forth. The individual defendants here were armed with no such state authority.

It is the misuse of *state* authority against which the Fourteenth Amendment was designed to protect the individual. In the absence of that state authority no claim is presented.

The principle upon which the distinction between state action and individual action rests in this case is not dissimilar to the principle enunciated in Central Hardware Co. v. National Labor Relations Board, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972), wherein it was said:

"Before an owner of private property can be subjected to the commands of the First and Fourteenth Amendments the privately owned property must assume to some significant degree the functional attributes of public property devoted to public use. The First and Fourteenth Amendments are limitations on state action, not on action by the owner of private property used only for private purposes. The only fact relied upon for the argument that Central's parking lots have acquired the characteristics of a public municipal facility is that they are 'open to the public.' Such an argument could be made with respect to almost every retail and service establishment in the country, regardless of size or location. To accept it would cut *Logan Valley* [Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.,

391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed. 2d 603] entirely away from its roots in *Marsh* [Marsh v. Alabama, 326 U. S. 501, 66 S.Ct. 276, 90 L.Ed. 265]. It would also constitute an unwarranted infringement of long-settled rights of private property protected by the Fifth and Fourteenth Amendments."

Similarly, if it is to be said that any act by an individual is state action if the state's law permits it, almost every act by an individual becomes state action. Such long-settled rights of private property as possessory liens of every type would be subject to being swept away, because of the inability to give notice and to hold a hearing prior to the holding of possession.

Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), does not direct a holding that the individual action in the present case was state action. *Reitman* must be viewed in the peculiar setting of that case. The court said:

"Here the California court, armed as it was with the knowledge of the facts and circumstances concerning the passage and potential impact of § 26, and familiar with the milieu in which that provision would operate, has determined that the provision would involve the State in private racial discriminations to an unconstitutional degree. We accept this holding of the California court."

It must also be remembered that such cases as *Reitman* grew out of the pervasive evil of racial discrimination, which demands peculiarly stringent procedures for eradication. No racial considerations infest the present case.

I am aware that the result I reach is in conflict with the holding by Judge Nielsen in the combined cases of Adams v. Egley and Posadas v. Star and Crescent Federal Credit Union, 338 F.Supp. 614 (U.S.D.C.S.D.Cal.1972). It is enough to say that I disagree with the result in those cases. See Lucom v. Atlantic National Bank of West Palm Beach, Florida, 354 F.2d 51, 55 (C.A.5th Cir. 1965).

Legally authorized self-help is neither a departure from the common law nor the remnant of an anachronistic feudal concept.

"Had we to write legal history out of our own heads, we might plausibly suppose that in the beginning law expects men to help themselves when they have been wronged, and that by slow degrees it substitutes a litigatory procedure for the rude justice of revenge. There would be substantial truth in this theory. For a long time law was very weak, and as a matter of fact it could not prevent self-help of the most violent kind. Nevertheless, at a fairly early stage in its history, it begins to prohibit in uncompromising terms any and every attempt to substitute force for judgment. Perhaps we may say that in its strife against violence it keeps up its courage by bold words. It will prohibit utterly what it can not regulate.

"This at all events was true of our English law in the thirteenth century. So fierce is it against self-help that it can hardly be induced to find a place even for self-defence. . . . This thought, that self-help is an enemy of law, a contempt of the king and his court, is one of those thoughts which lie at the root of that stringent protection of seisin on which we have often commented. The man who is not enjoying what he ought to enjoy should bring an action; he must not disturb an existing seisin, be it of land, of chattels, or of incorporeal things, be it of liberty, of serfage, or of the marital relationship. It would be a great mistake were we to suppose that during the later middle ages the law became stricter about this matter; it became laxer, it became permanently lax. . . . . In our own day our law allows an amount of quiet self-help that would have shocked Bracton. It can safely allow this, for it has mastered the sort of self-help that is lawless." II Pollock and Maitland, History of English Law, 574 (2d ed. 1899)

In recounting the English common law the Supreme Court of the United States in *Fuentes* observed that, "the creditor could, of course, proceed without the use of state power, through self-help, by 'distraining' the property before a judgment." Fuentes v. Shevin, 407 U.S. 67, 79, n. 12, 92 S.Ct. 1983, 1993, 32 L.Ed.2d 556 (1972).

It is doubtful that special conditions in our society now demand a reverting to the thirteenth century desire to eliminate self-help. Neither can it plausibly be argued that the due process clause of the Fourteenth Amendment, when it was written, intended to achieve that result in light of the common law's permitting peaceful self-help.

It is not improper to be sympathetic with the plight often faced by those in the position of Mrs. Pease. Sympathy, however, is not a basis for federal jurisdiction. That no claim is stated within the jurisdiction of this court does not mean that Mrs. Pease is without remedy. If, as the complaint in this case alleges, the defendants took the secured property against Mrs. Pease's will and by force, such action would appear to be in violation of § 9–503. If the defendants have deprived Mrs. Pease of a right secured by state law, the proper forum for a redress is in the courts of the State of Nebraska. There is no reason to assume that those courts will be less than zealous in protecting her rights.

The action will be dismissed for want of jurisdiction.