**Ida JAMES, Plaintiff,**

v.

**Elliot RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**No. 71 Civ. 3625.**

United States District Court,
S. D. New York.

June 13, 1973.

Donovan, Leisure, Newton & Irvine by Thomas F. Munno, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., S.D.N.Y., by Samuel J. Wilson, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff (hereinafter also "Claimant"), a resident of this District, brings this action pursuant to 42 U.S.C. § 405 (g) to review an adverse decision upon her request for widow's benefits under 42 U.S.C. § 402(e)(3). She now moves for summary judgment pursuant to Rule 56, F.R.Civ.P., and defendant moves for an order pursuant to 42 U.S.C. § 405(g) and Rule 12(c), F.R.Civ.P., granting judgment on the pleadings.

The Court has jurisdiction over the parties and the subject matter. All administrative remedies available to claimant have been exhausted.

At issue here is whether claimant's status should be determined to be that of "widow" of Joseph James, who died May 13, 1959, a resident of North Carolina. Congress has directed, in 42 U.S.C. § 416(h)(1)(A), as follows:

> "*Determination of family status*
> An applicant is the . . . widow . . . of a fully or currently insured individual for purposes of this subchapter if the courts of the State in which such insured individual is domiciled at the time such applicant files an application, or, if such insured individual is dead, the courts of the State in which he was domiciled at the time of death . . . would find that such applicant and such insured individual were validly married at the time such applicant filed such application or, if such insured individual is dead, at the time he died."

■ Facts developed after a full hearing by the Secretary, as well as the inferences drawn therefrom, if supported by substantial evidence, are conclusive in this action. But we should not make findings which the Hearing Examiner has failed to make, particularly where, as here, he has stated, explicitly, his rationale for denying benefits.

Plaintiff and the wage-earner, Joseph James, were lawfully married on January 13, 1925. In May, 1941, they separated, and Mrs. James moved from North Carolina, the marital domicile, to New York City.

In the March, 1945 term, Joseph James obtained a divorce from a competent court of North Carolina, where he then resided. Jurisdiction was obtained over the absent wife, plaintiff here, by publi-

cation only, based on the allegedly false representation by Joseph James to that Court that he "is reliably informed and believes that she is now living out of the State of North Carolina and in some northern state, but her whereabouts is not known".

On March 7, 1951, Mrs. James obtained a certified copy of the divorce decree. She used it to gain an advantage in connection with an application to the New York [City] Housing Authority. At no time thereafter, did she move to vacate the judgment of divorce. James had remarried on August 25, 1945, relying on the judgment.

The Examiner made no specific finding that James' representation to the North Carolina court was false, and that he, in fact, then knew of plaintiff's New York City address. He held instead, apparently, but not specifically, that claimant was guilty of laches, although not so denominated, and possibly estopped, by reason of her possession, since 1951, and use at the Housing Authority, of a certified copy of the judgment of divorce, and also held that:

"Additionally, it must be borne in mind that the divorce decree of March 1945, issued by a Court of the sovereign State of North Carolina; until set aside by that tribunal or a higher authority, is a valid decree and therefore binding upon all the interested parties herein under the full faith and credit clause of our own constitution."

The last quoted conclusion, which appears to be the principal basis for the determination, is clearly erroneous, as the "full faith and credit" to be given the judgment is only such faith and credit which the North Carolina Court would itself give. If it be found that the judgment was obtained by fraud on the Court, then the court granting the divorce will, in a proper case, set it side. McLean v. McLean, 233 N.C. 139, 63 S.E.2d 138 (1951).

Relying on Mott v. Secretary of Health, etc., 407 F.2d 59 (3rd Cir. 1969), we conclude that the Hearing Examiner should have given consideration to the following questions: (1) Did the wage-earner obtain a divorce by effecting service of process by publication, pursuant to a court order authorizing such service, which he obtained by fraud on the Court; (2) If so, would the Court in North Carolina find that he and claimant were still married, and that the judgment of divorce he thereafter obtained on default was not entitled conclusively to full faith and credit in that jurisdiction?

In the absence of specific findings, it would be premature, and in the nature of an advisory opinion, to comment on what effect is likely to be given by North Carolina to questions of laches or estoppel on the part of Mrs. James, and this we also leave for the Examiner.

In this regard, a problem exists, because the federal statute appears on its face to relate to validity of marriage, in a vacuum, so to speak, and without regard to standing or ability of claimant to raise the issue in the Court of North Carolina.

James, upon his remarriage, under familiar equitable principles in effect in most jurisdictions, would have been estopped to question the validity of his prior divorce, and it may well be that claimant would be estopped, or barred by laches. Henderson v. Henderson, 232 N.C. 1, 59 S.E.2d 227 (1950). However, children, in a proper case, or James' second wife, could mount a collateral attack on the divorce, and the court on its own motion, to protect the integrity of its process, as well as the Attorney General, representing the public interest, could attack a fraudulent divorce judgment directly.

The federal statute, which is remedial, and to be construed favorably to claimant, does not import expressly the issues of laches, waiver, or estoppel into disposition of the question of whether "the courts of the state in which he was domiciled at the time of death . . . would find [they] were validly married . . . at the time he died . . . ." [42 U.S.C. § 416(h)].

The Third Circuit, in *Mott, supra,* at p. 63 of 407 F.2d, impliedly rejects such a suggestion, quoting the lower court with apparent approval, as follows:

" 'The question is not whether the plaintiff had legal capacity under California law to attack the Nevada decree (such attack not being determinative of the validity of the marriage) . . . ., but rather whether the plaintiff was the wife of the wage-earner at the time of her application so as to entitle her to benefits under 42 U.S.C. § 416(h)(1)(A). There was substantial evidence before the Hearing Examiner from which he might conclude that the plaintiff was estopped from asserting the invalidity of the Nevada divorce decree; however, such estoppel would have only been applicable to, and effective in, a California proceeding under the facts of this case. Such a conclusion by the Hearing Examiner is not tantamount to a finding that the parties were not validly married in California at the time of the filing of plaintiff's application. Exploration into decisional law to determine what the courts of California would find is appropriate.' "

The case of Rocker v. Celebrezze, 358 F.2d 119 (2d Cir. 1966) and Cain v. Secretary of Health, etc., 377 F.2d 55 (4th Cir. 1967), each relied upon by defendant are not inconsistent with *Mott.* In *Rocker,* the Court held (358 F.2d p. 123):

"[I]f Mathilde had not been properly served in Louis' divorce action, Nevada would deny the effectiveness of its own decree because of defective jurisdiction. . . . But, here, a conflict existed between the affidavit of the process server filed in the Nevada divorce suit, stating that Mathilde had been personally served, and Mathilde's testimony in the New York suit, asserting that process had been left in her mailbox. Since this dispute was essentially one of credibility which the Hearing Examiner, based on

evidence before him, resolved against Mathilde, we cannot fault his conclusion that Nevada obtained jurisdiction over Louis' suit for divorce."

In *Cain,* the Court held (377 F.2d p. 58):

"The Secretary was under no constitutional compulsion to give full faith and credit to the state court decree; he was only under a statutory compulsion to determine what 'the courts' of South Carolina would find in regard to Mr. Cain's marital status at the time he died. 'The courts' does not refer solely to an *ex parte* order of a trial court. Rather, § 416(h) contemplates that the Secretary determine the law of the state as it has been declared by the Supreme Court of the state. Where, as here, the Supreme Court has not had occasion to declare the law, the Secretary may follow the opinion of a *nisi prius* court; but if he believes its decision to be in conflict with what the Supreme Court 'would find' were the point presented to it, he may disregard that lower court's decision. Indeed, it is well-settled that the Secretary is not bound by *ex parte* decisions made in the state courts. [Cite omitted.] The reason for this salutary rule is clear: if he should so limit his consideration of what is the law to that type of adjudication, he might well be under a statutory duty, if various trial courts in *ex parte* proceedings made mutually exclusive determinations, to apply conflicting rules in identical cases within the same state. In this respect, his mandate is similar to that of the federal courts under the *Erie* rule."

Defendant's motion is denied. Plaintiff's motion is granted to the extent that her request for widow's benefit is remanded to the Secretary for rehearing, and further proceedings consistent with the foregoing memorandum. Such remand is directed pursuant to 42 U.S.C. § 405(g) and defendant, in view of the age of this litigation, shall file with the Court any such additional and modified findings of fact and decision, and a transcript of the additional record and tes-

timony upon which his action in modifying or affirming was based, within ninety (90) days from the date hereof, unless such time is extended by Court order for good cause shown.

So Ordered.