**Ezra COCKEREL, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Virgil CALDWELL, d/b/a Caldwell's Garage, et al., Defendants.**

**Civ. A. No. 7892–A.**

United States District Court,
W. D. Kentucky,
Louisville Division.

April 22, 1974.

On Motion to Alter and Amend Order
July 17, 1974.

Lawrence S. Elswit, Kurt Berggren, Edward A. Pilkington, Legal Aid Society, Louisville, Ky., for plaintiffs.

Robert Hubbard, Louisville, Ky., for defendant Caldwell.

Boyce F. Martin, Jr., Louisville, Ky., for defendant Hallahan and others.

John A. Fulton, Louisville, Ky., for defendant Caldwell.

Before LIVELY, Circuit Judge, and BRATCHER and ALLEN, District Judges.

## MEMORANDUM OPINION AND ORDER

ALLEN, District Judge.

This action, originally testing the constitutionality of K.R.S. 376.270 and 376.-280(1), but now limited to a challenge to the latter statute, arises out of the following fact situation:

In October, 1973, plaintiff's 1965 Chevrolet Station Wagon was towed to a Texaco Station in Henryville, Indiana. Plaintiff sought the assistance of defendant Virgil Caldwell, a garageman located in Louisville, Kentucky, who agreed to a $50 towing fee to procure the car from the Texaco Station and hold it in Louisville until he was reimbursed by plaintiff. On October 7, 1973, Caldwell paid the towing fee to the Texaco Station and brought the automobile to Louisville to his garage. When Cockerel sought to reimburse Caldwell for

the towing fee, he was told that repairs had been made upon the automobile, on plaintiff's authorization, and that the repair bill amounted to $132.25. Caldwell demanded $182.25, the sum of the repair bill and the towing fee, before he would release the automobile to the plaintiff.

Plaintiff disputed authorization of the repairs and refused to pay the bill. On November 7, 1973, Caldwell filed a Mechanics' Lien Statement with the Jefferson County Clerk, No. 1009, for the amount of "service, repairs, storage and towing", in the amount of $182.25. On November 12, 1973, Caldwell's attorney sent Cockerel a notice of Mechanics' Lien Sale to take place on November 30, 1973, which was to satisfy the amount claimed in the Mechanics' Lien.

On November 21, 1973, plaintiff filed this action requesting injunctive relief, the empanelling of a three-judge court, and class action certification, as well as a declaration that K.R.S. 376.270 and 376.280(1) were unconstitutional. The District Court then enjoined the defendant from selling the automobile until further orders of court, and eventually allowed the automobile to be released into plaintiff's possession upon posting a bond in the total amount of $235. The three-judge court was convened pursuant to the order of Chief Judge Phillips on December 21, 1973.

K.R.S. 376.280(1) provides as follows:

"Any boat or motor vehicle remaining in the possession of a person who has made repairs, performed labor or furnished accessories or supplies therefor and to whom the charges for such repairs, labors, accessories or supplies has (sic) been owing for a period of more than thirty (30) days, may be sold to pay such deferred purchase money or charges. The proposed sale shall be advertised pursuant to KRS Ch. 424, and notice thereof shall be sent by registered mail to the owner of the boat or motor vehicle and to any other person known to have any interest therein, addressed to such persons at their last known addresses, at least ten (10) days before the sale is held."

Plaintiff's contention that K.R.S. 376.280(1) is unconstitutional in that it provides for no presale judicial hearing is well taken, in light of the decisions in Hernandez v. European Auto Collision, 487 F.2d 378 (2nd Cir. 1973); Straley v. Gassaway Motor Company, 359 F.Supp. 902 (S.D.W.Va.1973); and Mason v. Garris, 360 F.Supp. 420 (N.D. Ga.1973), a three-judge court. Each of these cases is bottomed upon an analysis of Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1280, 23 L. Ed.2d 349 (1969). As Circuit Judge Timbers pointed out in Hernandez v. European Auto Collision, Inc., supra, statutes granting garagemen the right to sell automobiles upon which they have done repairs without a prior judicial determination are invalid, because they deprive the owner of the automobile of a significant property interest which is not extinquished by the voluntary delivery of the automobile for the purposes of temporary storage and perhaps eventual repair. As Judge Timbers points out, there is little or no significance in the fact that the initial deliverance of the automobile was voluntary. He further points out that statutes such as the New York statute permit the deprivation of a significant property interest without a prior hearing, and there is no statutory language confining such action to extraordinary situations in which it might be justifiable.

Further, as pointed out by Judge Timbers, the sale of the liened goods, in this case the automobile, completely extinguishes the possibility of any future right to repossession in the event of ultimate success on the merits, whereas, replevin, which was involved in the Fuentes case, is only a provisional remedy intended to preserve the integrity of the goods pending trial.

■ The defendant Caldwell contends that, even though the statute may be unconstitutional, this is not the proper forum to assert the unconstitutionality and that the plaintiff does not have standing to do so, because he contends that there was no agreement to have the repairs made. In *Hernandez*, plaintiff asked the corporation-defendant's employee, following a collision, to tow his automobile to defendant's garage and to estimate the cost of repairs. An employee of the defendant garageman asked plaintiff two weeks later if the corporation should repair the automobile. The plaintiff replied in the negative, and was later advised that his car had been repaired, and he replied that he had not authorized the repairs. While his automobile was actually sold, and his action praying for a judgment that the lien law was in violation of the Due Process Clause of the Fourteenth Amendment, and permanent injunction against the enforcement of the law and punitive damages were dismissed, the Circuit Court held, in reversing the District Court, that the plaintiff had standing with respect to his challenge to the sales provision of the New York lien law. Therefore, defendant's contention as to plaintiff's lack of standing is without merit.

■ Defendant Caldwell contends that there is not sufficient state action involved under K.R.S. 376.280(1) to invoke the jurisdiction of this Court. The Sixth Circuit in Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153 (1973) disposed of this argument on pp. 162 and 163, relying upon the holding of the Supreme Court in Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). As is pointed out on those pages, direct, legislative embodiments of the public will, in the form of statutes, can be similarly considered actions of the state, even where they codify the common law, when the consequence of the statute enables private citizens to act in derogation of the Constitution.

■ In the instant case, the challenged statute, even though it may be a codification of the Kentucky Common Law, see Willis v. LaFayette-Phoenix Garage Company, 202 Ky. 554, 260 S.W. 364 (1924), confers upon the garageman the right to act in derogation of the Fourteenth Amendment of the Constitution. We, therefore, hold that the necessary element of state action is present in the challenged statute, and that the statute is unconstitutional within the guidelines set out in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S. Ct. 1280, 23 L.Ed.2d 349 (1969).

■ Next, we come to plaintiff's request for a class action. It is the opinion of the Court that no class action order should be entered since, in reality, an action which attacks the unconstitutionality of a statute such as this is, in effect, a class action for all persons who are affected by the statute, whether they be automobile owners or garage repairmen, or the County Clerk who merely effects the change in title after the sale of the automobile has taken place. We hold, therefore, that the motion for a class action is denied.

The Court takes note of the pleadings of the plaintiff asking for compensatory damages for detention of the automobile, and punitive damages. While these matters may well be moot, we leave them to the discretion of the trial court for such further proceedings as it may find appropriate.

■ In conclusion, it is noted that defendant Caldwell is counterclaiming for $275 against the plaintiff. The resolution of this issue should also be left to the trial court, since it is not a proper one for the decision of a three-judge court.

It is ordered that K.R.S. 376.280(1) is declared unconstitutional and in violation of the Fourteenth Amendment of the United States Constitution.

It is further ordered that defendant Caldwell is permanently enjoined from selling the automobile of the plaintiff Cockerel, and the defendant Bremer A.

Ehrler, successor in office to James R. Hallahan, is permanently enjoined from effecting transfers of title, pursuant to the provisions of K.R.S. 376.280(1).

It is further ordered that the question of damages to the parties and costs be reserved for determination by The Honorable Charles M. Allen, District Judge, and that the motion of the plaintiff for a class action is denied.

BRATCHER, District Judge (dissenting).

I feel constrained to dissent from the majority holding that KRS 376.-280(1) represents sufficient state involvement in the private conduct of the creditor to constitute action taken under color of state authority as delineated in 42 U.S.C. § 1983. The conduct being challenged here is similar to the activities previously attacked in William Gary v. Henry Darnell, t/d/b/a Hank Darnell Motors, Civil No. 7752–B (October 15, 1973), wherein this Court, relying on what it considered to be settled authority, determined the complained-of action to be "self-help" and therefore not within the purview of the Civil Rights Act and the due process protections of the Fourteenth Amendment. Relying on the reasoning in Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal., 1972); Kinch v. Chrysler Credit Corp., 367 F.Supp. 736 (E.D.Tenn., 1973); Huber v. Union Planters National Bank, Civil No. 72–264 (W.D.Tenn., 6/22/73); and Turner v. Impala Motors, Civil No. C–73–60 (W.D.Tenn., 6/15/73), it was concluded that the Commonwealth was not involved in a meaningful way because the creditor (or his agent) acted without the assistance or participation of any state official in independently taking possession of the security upon the debtor's default.

It should also be remembered that Reitman v. Mulkey, 387 U.S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1969), which the majority feels justifies a further expansion of the boundaries of the state action doctrine, "grew out of the pervasive evil of racial discrimination, which demands peculiarly stringent procedures for eradication. No racial considerations infest the present case". Pease v. Havelock National Bank, 351 F.Supp. 118 (D.C.Neb., 1972); Oller v. Bank of America, supra.

Further, the Court in *Oller*, supra, speaking to this issue, observed:

"It is difficult to imagine any statutory provision that does not, in some way, control human relationships. To say, as plaintiff seems to contend, that all human behavior which conforms to statutory requirements is 'State action' or is 'under color of State law' would far exceed not only what the Framers of the Civil Rights Act ever intended but common sense as well."

Additionally, Palmer v. Columbia Gas Co. of Ohio, 479 F.2d 153 (6th Cir., 1972), is distinguishable from the case at bar. The activities of the defendant in operating a public utility were quasi-governmental in scope and obviously "state action".

The remedy now before this three-judge district court is executed privately, without the direct invocation of state power. See Nichols v. Tower Grove Bank, 362 F.Supp. 374 (E.D.Mo., 1973). The fact that the state has enacted legislation does not, per se, create "state action". See Bond et al. v. Dentzer et al., 494 F.2d 302 (2nd Cir., 1974). The statute is regulatory in nature and purpose, imposed to protect those having legal or registered title to the vehicle. The notice provision provided for in KRS 376.280(1) assures such an owner of the opportunity to protect this interest.

A garageman who provides a service without any security for the labor performed except possession of the vehicle justifiably expects to be able to levy on this security to satisfy the indebtedness without the necessity of commencing a lawsuit to establish the debt. Although the statute does not specifically provide for a hearing, it obviously does not preclude the lienee from instituting an in-

dependent action to test the lienor's claim. True, the burden is on the lienee to act affirmatively; nevertheless, the existing state procedures for redress of alleged abuses by the garageman are preferable to mandating a hearing in each and every case where payment for services performed is withheld. Yet, the plaintiff claims his constitutional rights have been infringed since the garageman is not required to prove the obligation in every case, irrespective of the debtor's reasons for refusing payment.

I cannot agree, nor does constitutional due process demand, such a result. It is inconceivable to me that a bailor whose property is being wrongly denied would not avail himself of the appropriate judicial remedies to protect his property rights. For a federal court to hold this type of regulatory action unconstitutional when the Commonwealth provides adequate protections would be to distort the allocation of responsibility under the Constitution.

For the foregoing reasons, it is my confirmed belief that KRS 376.280(1) represents state inaction; therefore, federal jurisdiction has been improperly invoked and the complaint should be dismissed.

## MOTION TO ALTER AND AMEND ORDER

ALLEN, District Judge.

Following the entry of the opinion and order on April 22, 1974, holding that K.R.S. § 376.280(1) was unconstitutional, plaintiff moved to alter and amend the order and to declare K.R.S. § 376.270 unconstitutional and in violation of the Fourteenth Amendment of the United States Constitution.

It will be recalled that the Court did not pass on that question in its original opinion and order since, on oral argument, plaintiff's counsel had apparently abandoned attack upon the statute. However, defendant's counsel has agreed that he would not seize upon this tacti-

cal error, and that the matter could be presented to the Court for decision.

K.R.S. § 376.270, insofar as pertinent, provides:

"Any person engaged in the business of selling, repairing or furnishing accessories or supplies for motor vehicles shall have a lien on the motor vehicle for the reasonable or agreed charges for repairs, work done or accessories or supplies furnished for the vehicle, and for storing or keeping the vehicle, and may detain any motor vehicle in his possession on which work has been done by him until the reasonable or agreed charge therefor has been paid."

Since the entry of our original opinion and order, the Supreme Court, in Mitchell v. W. T. Grant Company, No. 72–6160, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, decided May 13, 1974, in a 6 to 3 decision, cast some serious doubt as to the viability of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). While the majority opinion seeks to distinguish *Mitchell* from *Fuentes*, Mr. Justice Stewart, in his dissenting opinion, declares that *Mitchell* is a repudiation of *Fuentes* and should be demonstrated as such.

While *Mitchell* is not expressly controlling here, some consideration should be given to the reasoning contained therein and the holding. The holding is to the effect that personal property may be sequestered by an *ex parte* application of a creditor who has made an installment sale of goods to petitioner and whose affidavit has asserted delinquency and prayed for sequestration to enforce a vendor's lien. On p. 1900 of 94 S.Ct. of the majority opinion, Mr. Justice White states:

"We cannot accept petitioner's broad assertion that the Due Process Clause of the United States Constitution guaranteed to him the use and possession of the goods until all issues in the case were judicially resolved after

full adversary proceedings had been completed."

On p. 1901 of 94 S.Ct., Mr. Justice White states:

"[T]here is scant support in our cases for the proposition that there must be final judicial determination of the seller's entitlement before the buyer may be even temporarily deprived of possession of the purchased goods."

Another point made by the majority opinion is that there is a real risk that the buyer in possession of personal property will conceal or transfer it to the damage of the seller.

We are cognizant that *Mitchell* is not dispositive here, see footnote 14 on p. 1906 of the majority opinion. Therefore, we will examine the cases which have directly ruled upon the constitutionality of automobile detention statutes, which are as follows: Adams v. Department of Motor Vehicles, 11 Cal.3d 146, 113 Cal. Rptr. 145, 520 P.2d 961 (decd. April 10, 1974); Straley v. Gassaway Motor Company, 359 F.Supp. 902 (D.C.S.D.W.Va. 1973); and Ford v. Dean's OK Tire Store, Inc., Civil No. L.V. 1974 (D.C. Nev. entered February 9, 1973).

In addition, counsel have referred to Quebec v. Bud's Auto Service, 32 Cal. App.3d 257 (1973). However, insofar as we are aware, a rehearing has been granted in that case and it is no longer precedent under California procedures, see our order dated May 22, 1974.

In Ford v. Dean's OK Tire Store, Inc., supra, the court entered a 4 page findings of fact and conclusions of law prepared by the attorney for the plaintiffs. In that action, the plaintiffs had purchased tires from the defendant on credit and had made periodic payments for 5 years. The account became delinquent and the defendant came to plaintiffs' home and towed away the personal vehicle of the plaintiffs without any prior notice or hearing, and continued to hold the vehicle, imposing as a condition for return of same that plaintiffs pay the entire sum alleged to be due on their account as well as the towing and storage charges.

The statutes involved in Nevada, N.R. S. §§ 108.270 and 108.280, are apparently identical in their language with the provisions contained in K.R.S. § 376.270. Without any discussion, the court, in its conclusions of law, declared the detention and lien statutes of Nevada as well as the sale statute unconstitutional as violating the Due Process Clause of the Fourteenth Amendment. Therefore, apart from its holding, *Ford* is of little value to the reasoning processes to be used in arriving at a correct decision. *Ford* also might be distinguished on the grounds that possession of the vehicle was in the plaintiffs and was taken from them forcibly, whereas in the instant action, possession was given voluntarily to the defendant. However, we prefer not to base our decision on these distinguishing characteristics.

In Straley v. Gassaway Motor Company, Inc., supra, the plaintiff alleged that she had agreed to have repairs made on her automobile with the defendant, who estimated the repairs to be between $60 and $70, but, who, upon making the repairs, charged her $230, a sum greater than the vehicle was worth. She asked that the West Virginia statutes allowing the garageman to retain possession of her automobile and to sell it in satisfaction of his bill be declared unconstitutional, which request the district court satisfied. While Judge Hall found the West Virginia detention statutes to be unconstitutional, he did not enter into any detailed discussion as to the reasons, other than stating he relied upon Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; and Shaffer v. Holbrook, 346 F.Supp. 762 (D.C.S.D. W.Va.1972), which holds the West Virginia landlord summary distress procedures to be unconstitutional.

Judge Hall did state that the West Virginia lien enforcement procedures were less satisfying of Due Process re-

quirements than were the landlord distress procedures, since the repairman already had the personal property in his possession, was not required to make an affidavit, give a bond, or institute an action.

Finally, we come to Adams v. Department of Motor Vehicle, supra. There the petitioner challenged the constitutionality of California's garageman's labor and materials lien. In trying the issues in that case, the court discussed the question of interim retention. The court reasoned that Sniadach v. Family Finance Corp. was not controlling, since it involved a claim of a garnisheeing creditor which was a general claim unrelated to the specific property seized. The court further held that while claims involving conditional vendors or chattel mortgagees arose out of transactions involving the seized chattels, the creditors, in those instances, had not mixed their own labor with the chattel or added to it materials to which they originally had a right of possession. The court then went on to reason that even if a garageman's lien is not superior to that of a conditional vendor or a chattel mortgagee, there was no state action since the creditor was in rightful possession of the property at the time he asserted his lien, and that to strike down his lien would be to alter the *status quo* in favor of the owner, thereby depriving the garageman of his possessory interest.

In light of our opinion and order of April 22, 1974, consistency demands that we not accept the reasoning of the *Adams* court insofar as it pertains to the absence of state action. However, we do believe that the reasoning with regards to preserving the *status quo* and protecting the laboring and property interest of the repairman are preservative factors in reaching the conclusion that Constitutional Due Process is not violated by the detention features of K.R.S. § 376.270. As is pointed out in *Adams*, the repairman not only has a possessory interest arising from his performance of labor and adding of

materials, but he is vested with the actual physical possession of the automobile by the voluntary action of its owner.

Finally, the detention features do not allow the extinction of the owner's titular interest in the automobile but merely allow its detention until such time as the claims of the litigants can be determined. As stated in *Adams*, if the owner remains unwilling or unable to pay the claim, the parties are relegated to the remedies provided by common law or statute. These remedies should suffice to determine the actual rights of the parties after full Due Process hearings, and it would be to the advantage of both parties, under ordinary circumstances, to press for a speedy hearing, since the repairman would be desirous of being compensated for his efforts, and the owner would be desirous of regaining speedy possession of the automobile.

Before concluding, we take note of the argument made by the defendant that the Court should abstain from deciding the issue of the constitutionality of the detention statute in light of the stipulation entered into between the parties to the effect that they were in disagreement as to whether plaintiff authorized defendant to perform repairs and whether or not repairs were actually performed. With regards to this contention, we note that it was implicitly overruled in the previous opinion and order and the Court does not feel disposed to retreat from that position.

In conclusion, it is held that the detention provisions of K.R.S. § 376.270 are constitutional.

It is ordered that the motion of the plaintiff to amend and alter the opinion and order of April 22, 1974 be and it is hereby overruled.

BRATCHER, District Judge (concurring in part).

I concur with the majority's holding that KRS § 376.270 is not an infringement of constitutionally guaranteed rights. However, I respectfully disagree

with the legal reasoning followed by my brother judges in reaching their decision. The Supreme Court's most recent pronouncement on creditor's remedies, Mitchell v. W. T. Grant Company, No. 72–6160, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (May 13, 1974) is, in my opinion, a more correct application of constitutional reasoning of this question than those expressed in its earlier decisions. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In addressing myself to this issue, it is not my intention to engage in an extensive discussion of the constitutional ramifications of the complained-of statute, but only to reaffirm my earlier impressions of this issue as expressed in more detail in my dissenting opinion of April 11, 1974. For the reasons therein stated, the instant action should be dismissed.