John H. CAESAR, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

Lester KISER, d/b/a L. K. Motorcycles, Defendant,

and

State of North Carolina, Defendant-Intervenor.

No. C-74-128-WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

Jan. 13, 1975.

Gerald C. Kell and B. Ervin Brown, II, The Legal Aid Society of Forsyth County, Winston-Salem, N. C., for plaintiff.

Renn Drum, Winston-Salem, N. C., for defendant.

James Wallace, Jr., and Keith L. Jarvis, Associate Attys., Raleigh, N. C., for defendant-intervenor.

## MEMORANDUM OPINION

WARD, District Judge.

This action came on for hearing by the Court on December 20, 1974, on the plaintiff's motion for partial summary judgment and declaratory relief. Counsel for the plaintiff and defendant were present, as well as counsel from the Attorney General's Office of the State of North Carolina, defendant-intervenor. The plaintiff claims damages resulting from the sale of his property pursuant to the sale provisions of North Carolina's possessory lien statute, N.C.G.S. § 44A-4. The plaintiff claims the statute provides for the sale of property of an owner by a lienor without notice and a hearing in violation of the due process clause of the Fourteenth Amendment. Plaintiff further seeks to have N.C.G.S. §§ 44A-2 and 44A-3 declared void.[1] Jurisdiction of the Court is based on 28 U.S.C. § 1343. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201–2202 and 42 U.S.C. § 1983.

The material facts are not in dispute and the question of constitutionality of the defendant's actions under the statute is the only issue before the Court. The facts are briefly summarized as follows.

On May 15, 1973, the plaintiff, John H. Caesar, delivered the unassembled parts of his motorcycle to the defendant, Lester Kiser, at Kiser's place of business. The defendant agreed to retain the parts until the plaintiff furnished him with the motorcycle's frame, at which time the defendant was to reassemble the vehicle. At the time the motorcycle parts were left with the defendant, the plaintiff furnished Kiser with a telephone number, although Kiser was not informed of plaintiff's address.

Subsequent to May 15, 1973, the plaintiff and the defendant communicated with each other as to when the motorcycle frame would be available. However, the frame was not forthcoming, and on September 28, 1973, Kiser asserted that accrued charges of $93.00 for storage of the motorcycle parts were due. Kiser attempted to contact plaintiff by telephone regarding the alleged accrued storage charges. Having had no success in his efforts to contact the plaintiff, and after conferring with officials of the North Carolina Department of Motor Vehicles, Kiser proposed to sell the motorcycle parts pursuant to the provisions of North Carolina General Statute § 44A-4, to satisfy the storage charges.

On November 28, 1973, Kiser forwarded to the North Carolina Department of Motor Vehicles notice of the proposed sale of the plaintiff's vehicle as required by N.C.G.S. § 44A-4(f). Kiser, having no address for the plaintiff, did not mail any notice of the proposed sale to plaintiff. When, on or about December 6, 1973, Kiser received from the Department of Motor Vehicles the plaintiff's address as indicated on his title to the motorcycle, Kiser went to that address but discovered that the house that had been there had been demolished. The defendant made no further effort to contact the plaintiff regarding the sale of the motorcycle.

On December 29, 1973, the defendant, having been notified by the North Carolina Department of Motor Vehicles that he had given them proper notice of the proposed sale and further having been informed by the Department that notice of the impending sale was being forwarded by the Department to the plaintiff and persons holding liens against the plaintiff's vehicle, conducted a sale of plaintiff's motorcycle at the defendant's place of business. A number of persons appeared at the sale and there were active bidders. The motorcycle parts were sold to Joe Franklin Kiser for a total price of $107.00.

On January 10, 1974, Joe Franklin Kiser, purchaser of the plaintiff's motorcycle parts at the sale conducted by the defendant, applied to the North Carolina Department of Motor Vehicles for a new certificate of title to the vehicle, and on February 1, 1974, the Depart-

---

1. The statutes in question are included in the Appendix.

ment issued the new title. Thereafter, the Department mailed notices to the plaintiff and lienholders of record against plaintiff's motorcycle that plaintiff's title to the motorcycle had been cancelled, the vehicle having been sold to satisfy Kiser's storage lien.

### Discussion

■ It is clear that the defendant acted in substantial compliance with the statute for sale of personal property to satisfy a possessory lien. This is not a case in which the lienor acted improperly and maliciously with property owned by another in derogation of the procedures set forth in the sale provisions of a possessory lien statute. In such cases the federal courts have properly declined to make constitutional determinations concerning the proper application of a statute wrongly applied in a given case. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Mojica v. Automatic Employees Credit Union, 363 F.Supp. 143 (N.D.Ill.1973), remanded on other grounds, Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

■ Furthermore, this is not a case calling for application of the abstention doctrine since a state statute which is clear and unambiguous is alleged to be unconstitutional on its face. Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); Adams v. Joseph F. Sanson Investment Company, 376 F.Supp. 61 (D.Nev.1974).

■ In Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969), the Supreme Court held that the Fourteenth Amendment's guarantee of due process requires the giving of notice and an opportunity for a hearing before the state, in aid of a creditor, may deprive a debtor of any significant property interest. The principle, however, applies only when a taking involves significant action by the state. *Cf.* Jackson v. Metropolitan Edi-son Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

In the case before the Court, the sale of the property was not accomplished by the actions of state officials or court process. However, this does not necessarily preclude a determination of state action. The North Carolina Department of Motor Vehicles plays an integral role in the sale of vehicles under the North Carolina possessory lien statute, N.C.G. S. § 44A-4. The possessory lien and the sale provision on vehicles are statutory creations and notice of the sale is required to be given to the Commissioner of Motor Vehicles. N.C.G.S. § 44A-4(f). The sale procedure is conducted by public or private auction and in order for a purchaser to receive valid title from a sale it is necessary that the Department record the transfer of title from the owner to the purchaser. Under North Carolina law, the sale could not be accomplished without the affirmative acts of the Department in transferring the indicia of ownership. Consequently, by statutorily authorizing and empowering the lienor to sell the vehicle and by authorizing the Department to record and recognize the transfer of title, the State has delegated to lienors of motor vehicles the traditional governmental function of lien enforcement and enabled the lienor to pass good title to motor vehicles which they do not own—without a judicial determination of the validity of the underlying debt.

■ The state is, therefore, actively involved in the creation and the enforcement of the lien on motor vehicles and such must be held to constitute "state action" as that term is used in 42 U.S.C. § 1983. Adams v. Department of Motor Vehicles, 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974); Cockerel v. Caldwell, 378 F.Supp. 491 (W.D.Ky. 1974); Hall v. Garson, *supra*; Barber v. Rader, 350 F.Supp. 183 (S.D.Fla.1972); Dielen v. Levine, 344 F.Supp. 823 (D. Neb.1972); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970); *See* Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598,

26 L.Ed.2d 142 (1970); Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L. Ed.2d 267 (1966).

It is to be noted that several recent cases dealing with the general topic of remedies of creditors have found state action to be lacking in the factual situations confronted. The majority of these cases center around self-help repossession statutes.[2] However, two major differences exist in self-help repossession statutes and the sale provisions of the North Carolina possessory lien statute. First, in the former statutory scheme, the person who holds title to the personalty is provided with a means by which he can effect self-help by regaining possession of *his* property—if he can do so peacefully—from a buyer in default. Under this statute, there is no problem with divestiture of ownership. Under the sale provision of the North Carolina possessory lien statute, there is an ultimate deprivation of ownership rights with title passing to a purchaser for value at the sale before a determination of the validity of the debt has been judicially established. N.C.G.S. § 44A-6. In fact, the statutory scheme does not require that a hearing *ever* be held. Secondly, self-help repossession statutes do not require the aid of a department of state government to be implemented. As was previously discussed, this state involvement is mandated by the possessory lien statute as it applies to the sale of titled motor vehicles. On this basis, the cases can be easily reconciled.

Having determined state involvement in the operation of the sale provision of the possessory lien statute relating to titled motor vehicles, the issue is whether the statute violates due process. The provisions of the possessory lien statute which provide for the retention of the motor vehicle by any person who re-pairs, services, tows, or stores such vehicles in his business, without prior notice or hearing, do not violate the due process clause of the Fourteenth Amendment. These sections of the statutes (N.C.G.S. §§ 44A-2 and 44A-3) are codifications of the common law principle that a garageman has a possessory interest in a vehicle left in his care by the owner or legal possessor and in which he has invested labor and materials. The lienor's possessory interest represents a balancing of the interests between ownership rights and the right of a craftsman to have security for payment for his service.

In Mitchell v. W. T. Grant Company, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the majority opinion of the Supreme Court distinguished *Mitchell* from *Fuentes* and *Sniadach* and held that personal property may be sequestered by an *ex parte* application of a creditor who has made an installment sale of goods to an individual and whose affidavit has asserted delinquency seeking sequestration to enforce a vendor's lien. Concerning the loss of use of the property by the purchaser, Justice White said:

> In our view, this statutory procedure effects a constitutional accommodation of the conflicting interests of the parties. We cannot accept petitioner's broad assertion that the Due Process Clause of the United States Constitution guaranteed to him the use and possession of the goods until all issues in the case were judicially resolved after full adversary proceedings had been completed. 416 U.S. at 607, 94 S.Ct. at 1900, 40 L.Ed.2d at 413.

\* \* \* \* \* \*

> [T]here is scant support in our cases for the proposition that there must be final judicial determination of the seller's entitlement before the buyer

---

2. A compilation of cases which have dealt with the question of the presence or nonpresence of state action in self-help repossession statutes is found in Shirley v. State National Bank of Connecticut, 493 F.2d 739 n. 6 (2d Cir. 1974). *See also* Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927 (1st Cir. 1974); Cook v. Carlson, 364 F.Supp. 24 (D.S.Dak.1973).

may be even temporarily deprived of possession of the purchased goods. 416 U.S. at 609, 94 S.Ct. at 1901, 40 L.Ed.2d at 414.

Although *Mitchell* deals with a different factual setting from the facts presented in the present case, the legal conclusions stated above offer considerable support for this Court's holding that the interim retention of the motor vehicle without requiring the lienor to give notice or hearing does not violate due process principles. In Ruocco v. Brinker, 380 F.Supp. 432 (S.D.Fla.1974), the court held the Florida mechanics lien law did not violate constitutional due process. However, the statute in question provided for recordation and a number of detailed pre-deprivation inquiries and a variety of post-deprivation hearings which the court deemed sufficient to meet procedural due process. The court observed,

> There may be instances when the deprivation of property is so severe and the post-deprivation safeguards are so inadequate that a prior opportunity to be heard is necessary. . . . Such deviation [of Florida's Mechanics Lien Law from that upheld in *Mitchell*] might well be deemed fatal if the statutory scheme provided for actual dispossession of realty or personalty. No such dispossession occurs here. 380 F.Supp. at 437.

The exception referred to in Ruocco v. Brinker, *supra,* that actual dispossession of the personalty without notice and a hearing might be deemed fatal, is exactly the situation presented by the facts of this case. *Fuentes* and *Sniadach* make it clear that due process requires notice and a prior hearing before property may be taken from a debtor. *Mitchell* has limited the application of the above rule in certain factual backgrounds where it would be sufficient, in the event only property rights are concerned, that there is *at some stage* an opportunity for a hearing and a judicial determination. In the case before the Court, after the motor vehicle is disposed of by sale by the lienor, the owner is left without his property and a hearing is not ever contemplated under the possessory lien statute. This is precisely the wrong which *Fuentes* dealt with and which is enunciated by Justice White in *Mitchell, supra:*

> Of course, as in Fuentes, consideration of the impact on the debtor remains. Under Louisiana procedure, however, the debtor, Mitchell, was not left in limbo to await a hearing that might or might not "eventually" occur, as he was under the statutory schemes before the Court in Fuentes. Louisiana law expressly provides for an immediate hearing and dissolution of the writ "unless the plaintiff proves the grounds upon which the writ was issued." 416 U.S. at 618, 94 S.Ct. at 1905, 40 L.Ed.2d at 420.

Under the sale provisions of the North Carolina possessory lien statute, the owner is subject to permanent deprivation of his property without a hearing prior to the sale of the motor vehicle and the transfer of its registration. He is, indeed, left in limbo as to whether a hearing will *ever* occur to establish the validity or invalidity of the underlying debt which supports the lien. Although the owner could certainly institute a civil action under the penalty provisions of N.C.G.S. § 44A-4(g) and an action for damages in the nature of conversion, such action could not reasonably be expected to be concluded within the twenty days provided for notice to be mailed before the sale. As is suggested by Adams v. Department of Motor Vehicles, *supra,* only by resort to a temporary restraining order and injunctions could the sale and transfer procedures be halted pending adjudication. These are in the nature of extraordinary remedies and consequently do not provide the assurance that a hearing will be held before the permanent deprivation of the owner's property occurs.

 It is, therefore, concluded that the sale provision of N.C.G.S. § 44A-4 permits the sale of motor vehicles by a lienor without affording the owner an opportunity for notice and a hearing to

judicially determine the validity of the underlying debt and in this respect the statute violates the due process clause of the Fourteenth Amendment. The lienor may still retain his possessory lien on the motor vehicle if the owner or legal possessor fails to pay his charges, but the lienor may not, without a prior judicial determination or the owner's waiver, sell the motor vehicle to satisfy his claim. If the parties cannot resolve the matter, they must resort to remedies provided at common law or by statutes which are consistent with due process. Hernandez v. European Auto Collision, Inc., 487 F.2d 378 (2d Cir. 1973) (dicta); *accord*, Adams v. Department of Motor Vehicles, *supra*; Cockerel v. Caldwell, *supra*; Straley v. Gassaway Motor Company, Inc., 359 F.Supp. 902 (S.D.W. Va.1973); Mason v. Garris, 360 F.Supp. 420 (N.D.Ga.1973); Dielen v. Levine, *supra.*

It is further concluded that the plaintiff is entitled to recover damages from the defendant Lester Kiser which resulted from the sale of the plaintiff's motor vehicle. The parties have informed the Court that, in all probability, they can agree upon damages. Should such agreement fail to materialize, a hearing will be scheduled to fix damages.

Since this action attacks the constitutionality of a statute, the effect of the declaratory judgment, in reality, provides the same relief for all persons who are affected by the statute. The request for a class action is, therefore, not necessary and is denied.

A judgment will be issued accordingly.

## APPENDIX

North Carolina General Statutes § 44A–2 provides:

*Persons entitled to lien on personal property.*—(a) Any person who tows, alters, repairs, stores, services, treats, or improves personal property other than a motor vehicle in the ordinary course of his business pursuant to an express or implied contract with an owner or legal possessor of the personal property has a lien upon the property. The amount of the lien shall be the lesser of

(1) The reasonable charges for the services and materials; or

(2) The contract price; or

(3) One hundred dollars ($100.00) if the lienor has dealt with a legal possessor who is not an owner.

This lien shall have priority over perfected and unperfected security interests.

(b) Any person engaged in the business of operating a hotel, motel, or boardinghouse has a lien upon all baggage, vehicles and other personal property brought upon his premises by a guest or boarder who is an owner thereof to the extent of reasonable charges for the room, accommodations and other items or services furnished at the request of the guest or boarder. This lien shall not have priority over any security interest in the property which is perfected at the time the guest or boarder brings the property to said hotel, motel or boardinghouse.

(c) Any person engaged in the business of boarding animals has a lien on the animals boarded for reasonable charges for such boarding which are contracted for with an owner or legal possessor of the animal and which become due and payable within 90 days preceding the mailing of notice of sale provided for in G.S. 44A–4. This lien shall have priority over perfected and unperfected security interests.

(d) Any person who repairs, services, tows, or stores motor vehicles in the ordinary course of his business pursuant to an express or implied contract with an owner or legal possessor of the motor vehicle has a lien upon the motor vehicle for reasonable charges for such repairs, servicing, towing, or storing. This lien shall have priority over perfected and unperfected security interests.

(e) The lessor of any house, room, apartment, office, store or other demised premises has a lien on all furni-

ture, household furnishings, trade fixtures, equipment and other personal property remaining on the demised premises 60 or more days after the tenant having legal title to such property has vacated the premises, unless the tenant has continued to pay the rental or unless the lessor, or his agent, and the tenant have an agreement to the contrary. This lien shall be for the amount of any rents which were due the lessor at the time the tenant vacated the premises and for the time, up to 60 days, from the vacating of the premises to the date of sale; and for any sums necessary to repair damages to the premises caused by the tenant, normal wear and tear excepted; and for reasonable costs and expenses of sale. The lien created by this subsection shall be enforced by sale at a public sale pursuant to the provisions of G.S. 44A–4(d). This lien shall not have priority over any security interest in the property which is perfected at the time the lessor acquires this lien.

3. North Carolina General Statutes § 44A–3 provides:

*When lien arises and terminates.*— Liens conferred under this article arise only when the lienor acquires possession of the property and terminate and become unenforceable when the lienor voluntarily relinquishes the possession of the property upon which a lien might be claimed, or when an owner, his agent, a legal possessor or any other person having a security or other interest in the property tenders prior to sale the amount secured by the lien plus reasonable storage, boarding and other expenses incurred by the lienor. The reacquisition of possession of property voluntarily relinquished shall not reinstate the lien.

4. North Carolina General Statutes § 44A–4 provides:

*Enforcement of lien.*—(a) Enforcement by Sale.—If the charges for which the lien is claimed under this article remain unpaid or unsatisfied for 30 days following the maturity of the obligation to pay any such charges, the lienor may enforce the lien by public or private sale as provided in this section.

(b) Private Sale.—Sale by private sale may be made in any manner that is commercially reasonable. Not less than 20 days prior to the date of the proposed private sale, the lienor shall cause notice to be mailed, as provided in subsection (e) hereof, to the person having legal title to the property, or if such person cannot be reasonably ascertained, to the person with whom the lienor dealt, and to each secured party or other person claiming an interest in the property, who is actually known to the lienor, by registered or certified mail. The lienor shall not purchase, directly or indirectly, the property at private sale and such a sale to the lienor shall be voidable.

(c) Request for Public Sale.—If an owner, any secured party, or other person claiming an interest in the property notifies the lienor, prior to the date upon or after which the sale by private sale is proposed to be made, that public sale is requested, sale by private sale shall not be made. After request for public sale is received, notice of public sale must be given as if no notice of sale by private sale had been given.

(d) Public Sale.—(1) Not less than 20 days prior to sale by public sale the lienor

a. Shall cause notice to be mailed, as provided in subsection (e) hereof, to the person having legal title to the property, or if such person cannot be reasonably ascertained, the person with whom the lienor dealt, and to each secured party or other person claiming an interest in the property, who is actually known to the lienor, by registered or certified mail; and

b. Shall advertise the sale by posting a copy of the notice of sale at the courthouse door in the county where the sale is to be held and by

publishing notice of sale once per week for two consecutive weeks in a newspaper of general circulation in the same county.

(2) A public sale must be held on a day other than Sunday and between the hours of 10:00 A.M. and 4:00 P.M.:

a. In any county where any part of the contract giving rise to the lien was performed, or

b. In the county where the obligation secured by the lien was contracted for.

(3) A lienor may purchase at public sale.

(e) Notice of Sale.—(1) The notice of sale shall include:

a. The name and address of the lienor.

b. The name of the person having legal title to the property, or if such person cannot be reasonably ascertained, the name of the person with whom the lienor dealt.

c. A description of the property.

d. The amount due for which the lien is claimed.

e. The place of the sale.

f. If a private sale the date upon or after which the sale is proposed to be made, or if a public sale the date and hour when the sale is to be held.

(2) Notice of sale required to be mailed shall be mailed to the address furnished to the lienor, or if no address has been furnished, to the last known address of the person entitled to the notice. If no address is known or reasonably ascertainable, it shall not be necessary to mail the notice.

(f) Notice to Commissioner of Motor Vehicles.—If the property upon which the lien is claimed is a motor vehicle that is required to be registered, the lienor shall send a copy of the notice of sale to the Commissioner of Motor Vehicles as required by G.S. 20-114(c).

(g) Damages for Noncompliance.—If the lienor fails to comply substantially with any of the provisions of this section, the lienor shall be liable to the person having legal title to the property in the sum of one hundred dollars ($100.00), together with a reasonable attorney's fees [fee] as awarded by the court. Damages provided by this section shall be in addition to actual damages to which any party is otherwise entitled.