**494**

553 P.2d 1301
Gerald DeMARSH, Plaintiff-Appellant,

v.

James H. LANDRETH, d/b/a Landreth
Wrecking Co., Defendant-Appellee.

No. 2046.

Court of Appeals of New Mexico.

Aug. 24, 1976.

John W. Fisk, Matkins & Martin, Carlsbad, for appellant.

Thomas L. Marek, McCormick, Paine & Forbes, Carlsbad, for appellee.

## OPINION

LOPEZ, Judge.

This case presents the issue of the constitutionality of the garageman's lien statute. Section 61–3–1, N.M.S.A.1953 (2d Repl. Vol. 9).

The plaintiff brought his car to the defendant's shop with instructions that the defendant install a new engine in the car.

The agreed price was $364.00. The defendant installed the intake manifold from the old engine on the replacement engine. When the replacement engine was started broken pieces of piston were sucked into the engine, damaging it. At the additional cost of about $100 the defendant repaired the damage caused the engine.

The plaintiff maintained that he told the defendant that his previous engine had been damaged by a broken piston so that the defendant should have known to have checked the intake manifold before installing it in the new engine. The defendant denies that the plaintiff told him this. When the plaintiff came to pick up the car, the defendant informed him of the additional charge but the plaintiff would not pay more than the original contract price.

After the plaintiff refused to pay, the defendant asserted a mechanic's lien and refused to return the car. The statute authorizing this action states:

"61–3–1. *Liens for manufacture or repairs—Motor vehicles.*—All artisans and mechanics shall have a lien on things made or repaired by them for the amount due for their work, and may retain possession thereof until said amount is paid. Any person or corporation who repairs any motor vehicle or furnishes parts therefor, at the request or with the consent of any person lawfully in possession of any such motor vehicle, shall have a lien upon such motor vehicle or any part or parts thereof for the sum due for repairing the same, and for labor furnished thereon, and for all costs incurred in enforcing such lien and may detain such motor vehicle in possession until such lien be paid."

Provision is also made in the statute for the sale at auction of cars on which money is due. Section 61–3–11, N.M.S.A.1953 (2d Repl. Vol. 9). This provision is not at issue here.

In addition to alleging the unconstitutionality of §§ 61–3–1 and 61–3–11, supra, the plaintiff sued, asking damages for loss-

es incurred by reason of the defendant's unlawful retention of his car. The trial court held that the lien statute was not unconstitutional, so that the defendant's detention of the car was not wrongful. In addition, the court found that the damage to the plaintiff's new engine was not caused by the defendant's negligence and that the plaintiff was therefore obligated for the whole amount. The plaintiff appeals the decision of the trial court that the statute is not unconstitutional.

The plaintiff's position is that it is unfair for the state to sanction a procedure in which a repairman is able to unilaterally decide what is owed him and then retain a person's property until the debt is satisfied. This procedure runs contrary to the basic presumption of our judicial system that one has a right to a hearing *before* one is deprived of property, he argues. U.S. Const. Amend. XIV, § 1; *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969). The property which the defendant has been deprived of is the use of his car.

The adjudication of conflicting rights of creditors and debtors forms one of the most difficult constitutional questions, with major economic repercussions following any decision. Our decision in this case does not purport to be a definitive statement of the constitutional principles governing these relationships. Different rights and historical backgrounds control different forms of liens. Note, Possessory Liens: The Need for Separate Due Process Analysis, 16 Wm. & Mary L.Rev. 971 (1975).

We will proceed in an order which is the reverse of the usual followed in the due process analysis. Without discussing the role of the state, we will consider whether due process is in fact violated by the assertion of a repairman's lien.

The important characteristics of the repairman's lien are that the garageman has possession of the item at the time the "taking" occurs, and that the garageman has added value, in the form of materials and labor to the specific item on which the lien is asserted.

In *Adams v. Department of Motor Vehicles,* 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974), the California Supreme Court upheld California's garageman's lien. The court noted that it is the general policy of the law to honor the possessory right actually vested in possession until a judicial determination of conflicting claims has been made. The conflicting claims in the property are brought about by the second element noted, that the repairman has invested property and labor of his own in the detained item. This duality of interests was discussed in *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed. 2d 406 (1974), in which the court, in discussing sequestration procedures applied to property purchased on an installment basis, observed that the problem is not the creditor's seizure of property in which he had no interest: "[t]he reality is that both seller and buyer had current, real interests in the property and the definition of property rights is a matter of state law. Resolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well." 416 U.S. at 604, 94 S.Ct. at 1898. This duality of interest was of course present in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) but in those cases the debtor's possession was displaced by procedures which were constitutionally infirm because of the intervention of the state without the proper judicial oversight. Once it is recognized that the creditor has a property interest in the contested article, "[t]o strike down the garageman's possessory lien would be to alter the status quo in favor of an opposing claimant; the garageman would be deprived of his possessory interest precisely as were the debtors in *Shevin* [*Fuentes v. Shevin,* supra, (debtors subject to replevin without notice or hearing)] and *Blair* [*Blair v. Pitchess,* 5 Cal.3d 258, 96

Cal.Rptr. 42, 486 P.2d 1242 (1971) (California claim and delivery procedures unconstitutional)]". *Adams v. Department of Motor Vehicles,* supra; accord, *Caesar v. Kiser,* 387 F.Supp. 645 (M.D.N.C.1975) (interim retention constitutional).

In *Phillips v. Money,* 503 F.2d 990 (7th Cir. 1974), cert. denied, 420 U.S. 934, 95 S. Ct. 1141, 43 L.Ed.2d 409 (1975), the simultaneous presence of the twin factors of a property interest and possession by the creditor persuaded the court that the garageman's lien statute did not violate due process. The court distinguished *Fuentes* and *Mitchell* by noting that in both cases the status quo was altered by the seizure of the debtor's goods, but, "[i]n contrast here the voluntary surrender of the motor vehicle to the garageman, albeit for the limited purpose of performing authorized repairs, results in the garageman having both a legal property interest, in the form of a lien, and actual possession. Interference with the *status quo* would be necessary to enable the owner to regain possession prior to final judgment."

A balancing of the debtor's and creditor's interest also led the court to uphold the detention provision of a garageman's lien in *Cockerel v. Caldwell,* 378 F.Supp. 491 (W.D.Ky.1974).

We adopt the approach taken in these cases and hold that the retention of property pursuant to the garageman's lien is not an unconstitutional deprivation of property.

Because of the delicacy with which decisions must be made in this area and the effects flowing from these decisions, we shall delineate what is not decided by this case.

The case before us does not concern the constitutionality of the sale provision of the materialman's statute, § 61–3–11, supra, because consideration of this section was rendered moot by reason of the fact that plaintiff paid the defendant the charges demanded and regained possession of his automobile. When a detained vehicle is sold the owner's interest is permanently severed. The permanency of the deprivation has been held to require notice and a hearing by courts which have upheld the detention provision of the garageman's lien. *Caesar v. Kiser,* supra; *Adams v. Department of Motor Vehicles,* supra; *Cockerel v. Caldwell,* supra. The sale provision has also been declared unconstitutional by courts which did not discuss the detention aspect of the lien statutes. *Mason v. Garris,* 360 F.Supp. 420, (N.D.Ga. 1973); *Whitmore v. New Jersey Division of Motor Vehicles,* 137 N.J.Super. 492, 349 A.2d 560 (1975).

We have assumed the presence of state action but have not decided whether it is present. The cases have split sharply on this issue. Representative of the cases holding that state action is present are: *Adams v. Department of Motor Vehicles,* supra, and *Cockerel v. Caldwell,* supra. Others have reached the opposite result: *Phillips v. Money,* supra, and *Parks v. Mr. Ford,* 386 F.Supp. 1251 (E.D.Pa.1975). The concept of state action is discussed in Burke and Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 46 S.C.L.Rev. 1003, 47 S.C.L.Rev. 1 (1973).

The due process analysis already undertaken illuminates the issue of state action and lends emphasis to the need for precise analysis of the operation of every form of lien law. In the repairman's lien the repairman has a property interest in a specific item of property, not a general lien, and is already in possession of the contested items. The opposite of this situation prevails in the landlord's lien, which has been subject to successful constitutional challenge. *Hall v. Garson,* 430 F.2d 430 (5th Cir. 1970).

In conclusion, this opinion represents a balancing of interests; the controlling principles will respond as the interests involved change.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., concurs.

SUTIN, Judge (specially concurring)

*I concur in the result only.*

Section 61–3–1 of the mechanic's lien law is constitutional. Section 61–3–11 is constitutional where procedure used is in the nature of chattel mortgage foreclosure. I hold that defendant was entitled to judgment on the pleadings. To arrive at this conclusion, it is necessary to analyze the pleadings, the decision and judgment of the trial court.

A. *Plaintiff's Complaint*

Plaintiff sought damages for conversion of his automobile by defendant. Defendant had a valid mechanic's lien, retained possession, and refused to surrender it. Plaintiff's claim for conversion, based on these facts alleged, does not state a claim upon which relief can be granted.

Under § 61–3–1, defendant had the right to retention of plaintiff's automobile. If plaintiff desired to obtain possession thereof, the proper remedy was replevin. *Mathieu v. Roberts*, 31 N.M. 469, 247 P. 1066 (1926).

Plaintiff's complaint also alleged that defendant notified plaintiff of his intention to enforce the mechanic's lien by the optional method provided by § 61–3–11; that this statute was unconstitutional; that by reason of both sections being unconstitutional, plaintiff's automobile was taken without proper notice and judicial hearing. Plaintiff's automobile was "not taken" in this manner because defendant did not sell the automobile. Plaintiff's complaint did not state a claim for relief under these facts.

B. *Defendant's Answer*

Defendant alleged as an affirmative defense:

The Defendant is enforcing his right of action *to foreclose a lien for repairs to Plaintiff's motor vehicle* which is not a state action. [Emphasis added]

This defense is not meritorious because defendant did not seek to foreclose his lien for repairs under § 61–3–11. Defendant sought enforcement of his lien by notice and sale.

C. *Defendant's Alternative Motion for Summary Judgment*

Defendant moved the court (1) for judgment on the pleadings as a matter of law. *I agree.* (2) In the alternative, defendant moved for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure. The trial court granted defendant's motion on Rule 56. *I disagree.* There are no factual issues involved in this case.

D. *Judgment of the Court*

In its decision, the trial court concluded that § 61–3–1 was constitutional and no tort was committed.

The trial court did *not* determine the constitutionality of § 61–3–11 as requested by plaintiff.

The trial court entered summary judgment. It decreed that defendant had a valid mechanic's lien and ordered:

That the Defendant may proceed *to foreclose his mechanic's lien on said automobile pursuant to the applicable New Mexico statutes.* [Emphasis added]

Defendant is now limited to an independent suit for foreclosure of his mechanic's lien under § 61–3–11.

E. *The only applicable statute is § 61–3–11. It is constitutional on foreclosure of the lien, but not under the optional method of enforcement.*

From plaintiff's complaint, defendant's answer, the decision and judgment of the trial court, the constitutionality of §

61–3–11 and its enforcement are issues in this case on appeal.

*Section 61–3–11 is constitutional* when the procedure is in the nature of chattel mortgage foreclosure. It is *unconstitutional in the optional method* of enforcement by notice and sale.

The first sentence of § 61–3–11 reads:

In order to enforce any lien under sections 61–3–1 through 61–3–18 New Mexico Statutes Annotated, 1953 Compilation, *the procedure shall be the same as in the case of the foreclosure of a chattel mortgage if suit be filed in court.* [Emphasis added]

This is the only statute applicable.

Under this provision, the statute is constitutional because, where suit is filed by the holder of the mechanic's lien, the debtor is granted a hearing and is not denied due process. Originally, the statute provided that the lienholder may commence his action in the ordinary form. See *Abeytia v. Gibbons Garage,* 26 N.M. 622, 195 P. 515 (1921); *Ross v. Overton,* 29 N.M. 651, 226 P. 162 (1924). Under § 61–3–11, the Supreme Court has held that by use of the chattel mortgage foreclosure procedure, the legislature referred to an *equitable action* of chattel mortgage foreclosure. *Mathieu v. Roberts,* supra. Under this portion of § 61–3–11, defendant must proceed in an independent action for foreclosure of his lien as provided in the judgment.

The optional method of enforcement in § 61–3–11 grants the holder of a mechanic's lien the right to an involuntary sale of the owner's property without affording the owner the opportunity for a hearing. This method of procedure is unconstitutional because it denies the owner due process. *Adams v. Department of Motor Vehicles,* 11 Cal.3d 146, 113 Cal.Rptr. 145, 520 P.2d 961 (1974), and other cases cited in the opinion.

### F. *Defendant cannot proceed under the optional method.*

Defendant gave plaintiff notice by certified mail that, pursuant to § 61–3–11, ten days from the date of the notice, plaintiff's automobile would be advertised and sold to satisfy the indebtedness. If defendant pursues this unconstitutional procedure by sale of plaintiff's automobile, defendant violates the order of the trial court and violates his right to continued lawful possession of plaintiff's automobile. By sale, plaintiff will be permanently deprived of the ownership of his automobile. The "sale" procedure not having been undertaken by defendant, defendant is entitled to possession of plaintiff's automobile until the indebtedness is paid. Defendant is also entitled to proceed independently in an equitable action of chattel mortgage foreclosure.

Defendant is entitled to judgment on the pleadings.