IN THE MATTER OF: ERNIE'S TIRE SALES & SERVICE, PLAINTIFF v. RICHARD JOE RIGGS, DEFENDANT

LLOYDS OF LONDON AND STRICKLAND INSURANCE BROKERS, PLAINTIFFS v. ERNEST NORTON, JR., D/B/A ERNIE'S TIRE SALES AND SERVICE, DEFENDANT

No. 9112SC583

(Filed 16 June 1992)

**Laborers' and Materialmen's Liens § 8 (NCI3d) — abandoned motor vehicle — disposal — mail notice undeliverable**

The trial court correctly set aside the sale of a stolen and recovered BMW where DMV was unable to secure delivery to the owner by certified mail of the notice of intent to sell; the lienholder obtained an order authorizing the sale from the clerk of court and mailed a copy to the bank which had previously held the car loan and another copy to the address of the owner listed with DMV, which was not then his actual address; the lienholder did not advertise the sale in the newspaper or publicize the sale other than to tell a friend that he needed two bidders present at the sale; the friend and his son were present at the sale and entered one bid, followed by a bid from the lienholder; the lienholder solicited other bids from his friend, then declared the car sold to himself; the insurance company which had become subrogated to the rights of the car owner subsequently learned of the sale and filed a motion to set aside the report of sale and the order directing transfer of the title; and plaintiffs filed an action alleging that the sale was improper. Although the lienholder alleges that a special proceeding serves as a substitute for a public or private sale, there is language within N.C.G.S.

§ 44A-4(b)(1) which indicates that a special proceeding does not replace the public or private sale requirement. To adopt the interpretation urged by appellant would allow a lienholder to sell a vehicle in a commercially unreasonable manner to himself or his friends simply because the debtor cannot be located.

**Am Jur 2d, Auctions and Auctioneers §§ 1, 12.**

APPEAL by plaintiff from judgment entered 4 February 1991 in CUMBERLAND County Superior Court by *Judge Gregory A. Weeks.* Heard in the Court of Appeals 9 April 1992.

*Walen & McEniry, P.A., by James M. Walen, for plaintiff-appellant.*

*Anderson, Broadfoot, Johnson, Pittman & Lawrence, by John H. Anderson, II, for defendants-appellees, Richard Joe Riggs and Lloyds of London and Strickland Insurance Brokers.*

WYNN, Judge.

On 6 January 1987, Richard Joe Riggs' 1985 BMW was stolen; he reported the theft to the Raleigh Police Department. The residential address of Riggs listed with the Division of Motor Vehicles (DMV) was in Clayton, but Riggs' address at the time of the theft was actually in Raleigh.

Also at the time of the theft, Lloyds of London, by and through Strickland Insurance Brokers, had $30,000 of insurance coverage on said theft, even though the BMW was valued in excess of $30,000. On 19 March 1987, Riggs submitted a Sworn Statement In Proof of Loss concerning the theft of the BMW, and was paid the full amount of coverage under the policy of insurance. Lloyds of London then became subrogated to all legal ownership rights in said BMW and informed Raleigh Police of its interest in the BMW and requested notification in the event of the recovery of said vehicle.

The BMW was recovered on 9 September 1989, in Cumberland County, by the North Carolina State Highway Patrol and was towed to appellant's place of business in Fayetteville, North Carolina. On 19 January 1990, appellant notified the DMV of its intent to sell the BMW to satisfy its lien acquired under N.C. Gen. Stat. § 44A-2 (1989), in the amount of $100 for towing and $1,300 for storage.

The DMV mailed notice of appellant's intent to sell on 2 May 1990, to Riggs' Clayton as well as his Raleigh address, to Trooper McLeod who had authorized appellant to tow and store the BMW, and to appellant. Subsequently, the DMV notified appellant that it had been unable to secure delivery of the certified mail notice to Riggs. DMV also informed appellant that it could contact the Clerk of Court in its county and file a petition for authorization to sell the vehicle.

Appellant filed a Petition for Motor Vehicle Lien Sale Authorization to have a public sale on 30 June 1990 at 10:00 a.m. The Cumberland County Clerk of Court issued an order authorizing the sale as requested to take place at appellant's place of business. Appellant made several copies of the order and mailed one to the bank which previously held the car loan and one to Riggs at the Clayton address. Appellant did not advertise the sale in the newspaper or publicize the sale other than to tell his friend, Wimpy McCorquodale, that he needed two bidders present at the sale.

On the date set for the sale, appellant arrived at his place of business between 10:30 and 10:45 a.m. Wimpy McCorquodale and his son were already there, and one of them bid $1,200 for the BMW. Appellant then bid $1,325 on the BMW. After soliciting other bids from Mr. McCorquodale and his son and receiving no response, appellant declared that the car was sold and that he was the legal owner. The average retail book value of the BMW on the date of sale was $20,150, and the average trade-in value was $17,450, not including add-ons for accessories.

Appellant later filed a Report of Sale with the Cumberland County Clerk of Court, stating that a copy of the petition and order authorizing the sale had been sent to Riggs at the Clayton address, appellant was the highest bidder in the amount of $1,325, and Mack's Towing Service was the second highest bidder at $1,200. The Report also stated that the total amount collected was $1,325, of which appellant retained $25 for the cost of the proceeding and $1,300 to satisfy the lien. After receiving this Report, the Clerk issued an Order Directing Transfer of Motor Vehicle After Lien Sale which directed the DMV to cancel the existing title and to issue a new title to Ernie's Tire Sales & Service.

Lloyds of London first became aware that the BMW had been recovered on 17 July 1990, and subsequently filed a Motion to

Set Aside Report of Sale and a Motion to Set Aside Order Directing Transfer of Motor Vehicle After Lien Sale. The Clerk issued an Amended Order on 20 July 1990, to protect and preserve the automobile and not dispose of same until ownership could be determined by the court.

Plaintiffs filed suit, alleging that the sale of the BMW, as conducted by defendant, was improper. They also made a motion requesting that the sale be set aside which the trial judge granted. It is from this order that defendant appealed to this Court.

---

The sole issue presented for our review is whether N.C. Gen. Stat. § 44A-4(b)(1) (1991) allows lienors of abandoned motor vehicles to dispose of them without complying with the requirements of section 44A-4 as they pertain to other types of personal property when the registered or certified mail notice has been returned as undeliverable. For the reasons which follow, we affirm the decision of the trial court.

The issue presented by appellant is a matter of first impression for this Court. We begin our analysis by examining the statutory language of N.C. Gen. Stat. § 44A-4(b)(1). The pertinent provisions follow:

> If the Division notifies the lienor that the registered or certified mail notice has been returned as undeliverable, the lienor may institute a *special proceeding* in the county where the vehicle is being held, for authorization to sell that vehicle. In such a proceeding a lienor may include more than one vehicle, but the proceeds of the sale of each shall be subject only to valid claims against that vehicle, and any excess proceeds of the sale shall escheat to the State . . . .

> The application to the clerk in such a special proceeding shall contain the notice of sale information set out in subsection (f) hereof. If the application is in the proper form the clerk shall enter an order authorizing the sale on a date not less than 14 days therefrom, and the lienor shall cause the application and order to be sent immediately by first-class mail pursuant to G.S. 1A-1, Rule 5, to each person to whom the Division has mailed notice pursuant to this subsection. Following the authorized sale the lienor shall file with the clerk a report in the form of an affidavit, stating that two or more bona

fide bids on the vehicle were received, the names, addresses and bids of the bidders, and a statement of the disposition of the sale proceeds. The clerk then shall enter an order directing the Division to transfer title accordingly.

*Id.* (emphasis added).

When reviewing appellant's assertion that a "special proceeding" serves as a substitute for a public or private sale, we must keep in mind the well-established maxim of statutory construction that all parts of a statute must be read together, neither taking specific words out of context, nor interpreting one part so as to render another meaningless. *State v. Tew*, 326 N.C. 732, 392 S.E.2d 603 (1990); *In re Brownlee*, 301 N.C. 532, 272 S.E.2d 861 (1981); *State ex rel. Comm'r of Ins. v. North Carolina Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). We, therefore, will examine section 44A-4, in its entirety, for language which sheds light on the meaning of "special proceeding" under subsection (b).

Within subsection 44A-4(b)(1), there is language which indicates that a "special proceeding" does not replace the public or private sale requirement. An application for a "special proceeding" must contain the information specified in subsection (f); one of the items of information called for is as follows: "(6) If a private sale the date upon or after which the sale is proposed to be made, or if a public sale the date and hour when the sale is to be held." N.C. Gen. Stat. § 44A-4(f)(6) (1991). Appellant, in the application to the clerk, stated an intention to conduct a public sale, indicating that he read the statute as requiring him to conduct either a commercially reasonable public or private sale.

Furthermore, subsection 44A-4(a), in relevant part, provides,

(a) Enforcement by Sale. — If the charges for which the lien is claimed under this Article remain unpaid or unsatisfied for 30 days following the maturity of the obligation to pay any such charges, the lienor may enforce the lien by public or private sale as provided in this section.

N.C. Gen. Stat. § 44A-4(a) (1991). Subsection (a), Enforcement by Sale, is a general provision and addresses methods of enforcing liens. The provision at issue, subsection (b), on the other hand, is entitled Notice and Hearing and does not purport to prescribe the method of sale. A "special proceeding" under subsection (b)

**UNITED SERVICES AUTO. ASSN. v. UNIVERSAL UNDERWRITERS INS. CO.**

[106 N.C. App. 465 (1992)]

serves as a means of securing authorization to sell the vehicle and as a method for obtaining a title transfer from the DMV. Such a proceeding is necessary since registered motor vehicles, unlike other items of personal property, require the involvement of a state agency to effect a transfer of title. *See Caesar v. Kiser*, 387 F. Supp. 645 (M.D.N.C. 1975).

In the case before this Court, appellant concededly failed to conduct a proper private sale since subsection 44A-4(c) prohibits a lienholder from purchasing the subject property at a private sale. Appellant likewise did not comply with the public sale requirements under subsection 44A-4(d). The language of N.C. Gen. Stat. § 44A-4 clearly mandates that a lienholder conduct either a public or private sale. To adopt the interpretation urged by appellant would allow for a lienholder to sell a vehicle in a commercially unreasonable manner to himself or his friends simply because the debtor cannot be located. For the foregoing reasons, we affirm the decision of the trial court to set aside the sale.

The decision of the trial court is,

Affirmed.

Judges LEWIS and WALKER concur.