920 P.2d 1025

**AIR RUIDOSO, LTD., INC., a New Mexico corporation, Plaintiff–Counterdefendant–Appellant,**

v.

**EXECUTIVE AVIATION CENTER, INC., a New Mexico corporation, Defendant–Counterclaimant–Appellee.**

No. 22518.

Supreme Court of New Mexico.

June 25, 1996.

Rehearing Denied July 24, 1996.

Hawthorne & Hawthorne, Charles E. Hawthorne, Ruidoso, for Appellant.

Butt, Thornton & Baehr, P.C., Paul T. Yarbrough, Emily A. Franke, Albuquerque, for Appellee.

## OPINION

RANSOM, Justice.

1. Air Ruidoso, Ltd., Inc., operated a commuter airline and air charter service be- tween Ruidoso, New Mexico, and airports in Albuquerque and El Paso. Executive Aviation Center, Inc., provides services for airlines at the Albuquerque International Airport. Executive Aviation took possession of Air Ruidoso's airplane to enforce a claimed lien for $10,900.59 that Air Ruidoso owed on an open account for fuel, oil, and oxygen supplied on many occasions. Executive Aviation sued to foreclose its lien, and, separately, Air Ruidoso sued Executive Aviation for replevin and damages caused by loss of the airplane's use. Executive Aviation counter-claimed for abuse of process, prima facie tort, and for sanctions pursuant to SCRA 1986, 1–011 (Repl.Pamp.1992) (imposing sanctions for frivolous motions, pleadings, and other papers). The court granted Executive Aviation summary judgment on Air Ruidoso's complaint and awarded Rule 1–011 sanctions. Air Ruidoso appeals. Finding that Executive Aviation had no possessory lien over the aircraft, we reverse the decision of the trial court and remand for determinations consistent with this opinion.

2. *Facts and proceedings.* After several payment requests were made by Executive Aviation during 1988, Air Ruidoso provided two checks, each for $1,000, as partial payment on its open account. Executive Aviation deposited the checks, and both were returned for insufficient funds. On November 21, 1988, the only airplane owned by Air Ruidoso landed in Albuquerque and the pilot entered the offices of Executive Aviation. Looking out a window, the pilot saw the vice-president of Executive Aviation attaching an aircraft trailer to the airplane. The vice-president explained that he was taking possession of the airplane, pursuant to a possessory lien, for the amount owed on the open account.

3. Air Ruidoso filed its complaint for replevin and damages on December 13, 1988, alleging that Executive Aviation wrongfully seized its airplane. On December 19, 1988, Air Ruidoso paid the outstanding debt in full and regained possession of the plane. Executive Aviation dismissed its complaint to foreclose the lien, but Air Ruidoso pursued its suit seeking damages for the several

weeks that the airline did not have an airplane. Executive Aviation then counterclaimed for attorney's fees and interest on the open account. On December 8, 1989, because Air Ruidoso failed to maintain continuous service, the Federal Aviation Administration revoked Air Ruidoso's commercial-provider certification, known as a "401 certificate." The FAA stated that the certification was revoked because of the period in late 1988 during which the airline was without aircraft. Without the 401 certification, Air Ruidoso is unable to operate as a commercial airline.

4. On January 3, 1990, Air Ruidoso filed an amended complaint, adding to its list of damages the loss of the 401 certificate and the cancellation of flights and charters. Executive Aviation responded with its amended counterclaim for abuse of process, prima facie tort, and for Rule 1–011 sanctions. On Executive Aviation's motion, the court dismissed the amended complaint. Executive Aviation then filed a motion for summary judgment on its amended counterclaim. The trial court held a hearing and granted the motion, awarding attorney's fees and Rule 1–011 sanctions to Executive Aviation.

5. *The issues.* The two issues raised by Air Ruidoso on appeal are (1) whether the trial court erred in granting summary judgment upholding the right of Executive Aviation to impose a possessory lien on the aircraft, and (2) whether the trial court erred in awarding Rule 1–011 sanctions, in the form of attorney's fees in the amount of $22,404.13, for the bad faith of Air Ruidoso in claiming that its loss of certification was caused by the actions of Executive Aviation.

■ 6. *Possessory lien against the aircraft.* As one commentator described the general nature of possessory liens, "it is a well-settled principle of the common law that he who by labor, skill, or materials adds value to the chattel of another ... has a possessory lien thereon for the value of his services and may retain the chattel in his possession until the same be paid." Ray Andrews Brown, *The Law of Personal Property* § 13.1 (Walter B. Raushenbush ed., 3d ed.1975). The party asserting the lien must have legal possession of the chattel at the

time the lien is asserted. *Commerce Acceptance of Oklahoma City, Inc. v. Press,* 428 P.2d 213, 214 (Okla.1967) (quoting *Liberty Plan Co. v. Walker,* 199 P.2d 205 (Okla. 1948)); *cf. Romero v. Sanchez,* 119 N.M. 690, 695, 895 P.2d 212, 217 (1995) (distinguishing repossession of property from retention of property already in legal possession). The lien historically is for value added to the chattel. *DeMarsh v. Landreth,* 89 N.M. 494, 495, 553 P.2d 1301, 1302 (Ct.App.1976) (holding that one of the important features of a possessory lien is that the party has "added value, in the form of materials and labor to the specific item on which the lien is asserted"); *see also Meyers v. Bratespiece,* 174 Pa. 119, 34 A. 551, 551 (1896) (stating that a lien may arise when an artisan, entrusted with the responsibility of improving an item of personal property, increases the value of that property by his or her labor). The lien may be maintained until the debt has been paid. *Cf. Abeytia v. Gibbons Garage,* 26 N.M. 622, 629, 195 P. 515, 518 (1921) (opinion on rehearing) (holding that "at common law the right of a mechanic or repair man to a lien upon an article repaired is dependant upon his actual and continued possession"). When a lien is specifically created by statute, the lien, of course, must comply with the requirements of the statute. *Unger v. Checker Taxi Co.,* 30 Ill.App.2d 238, 174 N.E.2d 219, 221 (1961) (holding that "[a] lienor who seeks to enforce a statutory lien must comply with any statutory requirement with respect to enforcement of such a lien").

■ 7. —*Possession.* We first question whether Executive Aviation ever had legal possession of the aircraft prior to assertion of an alleged possessory lien. There is a distinction between, on the one hand, the exercise of self-help in *taking* possession of collateral under the Uniform Commercial Code, NMSA 1978, § 55–9–503 (Repl. Pamp.1987), and, on the other hand, *retaining* possession of property to enforce a statutory possessory lien. It has long been recognized that when one who has the advantage of a statutory possessory lien voluntarily surrenders possession, the right to possession is waived. "If [the repairman] voluntarily surrenders possession of [the chattel], he has

not waived his lien but he has waived his right to possession." *Mathieu v. Roberts*, 31 N.M. 469, 475, 247 P. 1066, 1068 (1926); *see also* NMSA 1978, § 48–3–29(B) (Repl. Pamp.1995) (implying that, absent fraud or illegality, possessory lien is waived when possession is relinquished).

8. In *Mathieu* we stated that if possession is relinquished after the debt becomes due, the lienholder cannot recover possession. *Mathieu*, 31 N.M. at 475, 247 P. at 1068. "The time of payment might be a matter of agreement, but, so far as the right to retain possession under the lien was concerned, the debt was due immediately upon furnishing the repairs or parts." *Id.* Except when actual possession has been involuntarily relinquished, there is no doctrine of constructive possession that supports a possessory lien. We will not recognize a possessory lien when possession is not legally present. There is no evidence in the record that Executive Aviation had possession of the airplane for purposes of providing any services or supplies on the day that the possessory lien was asserted.

9. Executive Aviation argues that it had constructive possession of the aircraft since it had earlier released the airplane in exchange for two worthless checks. Executive Aviation asserts that it did have possession of the airplane during previous refuelings and was entitled to retain possession of the aircraft pursuant to the aircraft possessory lien statute, Section 48–3–29. Further, argues Executive Aviation, if it was entitled to a possessory lien and then released the airplane due to fraud, the possessory lien was not extinguished even though actual possession was lost. *See Garcia v. Rutledge*, 649 S.W.2d 307, 311 (Tex.Ct.App.1982) ("[I]t is well established that the right to retain possession given by this statute is. lost on voluntary delivery of the vehicle to the owner where no fraud in obtaining possession is involved.");

*Yellow Mfg. Acceptance Corp. v. Bristol*, 193 Or. 24, 236 P.2d 939, 947 (1951) ("Priority of a possessory or nonpossessory lien over that of a chattel mortgage is not lost where the property is taken from the actual possession of the lien claimant without his consent by force or fraud."). We have been directed, however, to no evidence that the airplane previously had been released from the possession of Executive Aviation in exchange for the checks. In any event, because of our determinative interpretation of Section 48–3–29 below, it becomes unnecessary for us to decide the issues of actual or constructive possession. We only observe that, while possession is normally present in the provider of repairs or maintenance, or of storage, we are not persuaded in general, and the facts here do not reflect, that possession is or was ever surrendered by Air Ruidoso for the supply of fuel, oil, or oxygen.[1]

10. —*Value not added.* Executive Aviation has directed this Court to *General Electric Capital Corp. v. Advance Petroleum, Inc.*, 660 So.2d 1139, 1141 (Fla.Dist.Ct.App. 1995), for the proposition that a possessory lien may arise for fuel provided to an airplane. In *General Electric*, the court held that one party had successfully created a lien against an aircraft to recover amounts due for refueling the plane. The statutes in question "authorize the provider of aircraft fuel to obtain a lien upon an aircraft to secure unpaid fuel charges." *General Electric*, 660 So.2d at 1141. That case, however, did not involve a *possessory* lien and provides little guidance in interpreting the statutes of New Mexico, especially statutes that authorize possessory liens that historically have arisen when a party either increases the value of a chattel, through repair or maintenance, *DeMarsh*, 89 N.M. at 495, 553 P.2d at 1302, or protects the value of the chattel by storing it, *cf. Newman v. Basin Motor Co.*, 98 N.M. 39, 45, 644 P.2d 553, 559 (Ct.App. 1982) (recognizing statutory liens arising

1. We note another issue, though not raised by the parties, as to whether a possessory lien can be asserted against the entire amount due on an open account. A lien that is dependant upon possession is only valid as long as there is possession; it can be waived by the voluntary relinquishment of possession. If we assume that Executive Aviation had gained possession each time it refueled the aircraft, it necessarily follows that it would lose possession of the aircraft each time Air Ruidoso regained possession. Whether a possessory lien acquired during any individual refueling would relate only to the debt incurred on that occasion, not to the entire open account, is a question we nonetheless need not answer here.

from the storage of a chattel, but finding the specific chattel not included within the scope of the statute). Even if we assume that Executive Aviation had temporary control of the aircraft, there remains the fact that fuel, oil, and oxygen are entirely consumed by use and do not increase or protect the value of an aircraft so as to give rise to a possessory lien under accepted rationale. Consequently, Executive Aviation must show that it had a right to take possession and assert a possessory lien under a unique interpretation of Section 48–3–29.

■ 11. —*Section 48–3–29.* When read as a whole, as urged by Executive Aviation, Section 48–3–29 does not allow possessory liens for providing "supplies" to an aircraft.[2] Subsection (A) provides for liens in favor of one who "stores, maintains or repairs any aircraft accessories or furnishes materials for an aircraft." Executive Aviation has argued that refueling an airplane is "furnishing material," but this definition is counterintuitive and contrary to New Mexico case law. In *Anderson v. United States Fidelity & Guar. Co.,* 44 N.M. 483, 486, 104 P.2d 906, 908 (1940), in the context of a performance bond, we held that "the word 'supplies' includes only those articles which by their very nature are necessarily consumed." The term "supplies" is thus distinguishable from and would not come within "materials," which, by common definition, compose parts of an airplane.

12. In the alternative, Executive Aviation argues that, *when read together with Subsection (D),* Subsection (A) allows for possessory liens in favor of persons who furnish supplies for airplanes. The legislature explicitly listed "supplies" under Subsection (D), the section dealing with perfection of liens to which a creditor is entitled "pursuant to Subsection A," but did not include "supplies" in Subsection (A), the section that creates *possessory* liens. It is consistent with common-law rationale supporting possessory liens for value added to a chattel that the legislature excluded supplies from the Section that specifically establishes the right to possessory liens. We reject the argument that because "supplies" are included in Subsection (D) describing perfection of all liens, they must be read into Subsection (A) to give meaning to the statute as a whole. Subsection (E) supports our interpretation in that "[t]he lien perfected pursuant to Subsection D . . . may be enforced against this aircraft, *whether or not in the possession of the lienholder."* (Emphasis added.) Therefore, we hold that, regardless of whether it had actual possession when providing "supplies," Executive Aviation did not, by virtue of providing

---

2. Section 48–3–29 (lien for repair or service to aircraft; detention; priority; enforcement) provides in relevant part that

A. Any person engaged in the business of operating an airport, hangar or place for maintenance or repair of aircraft who stores, maintains or repairs any aircraft accessories or furnishes materials for an aircraft at the request or with the consent of the owner . . . shall have a lien upon the aircraft or any part thereof for the sum due for storing, maintaining or repairing the aircraft for labor furnished, for accessories or materials and for all costs incurred in enforcing the lien and may detain the aircraft until the sum due is paid. . . .

B. If the person who provides the services provided in Subsection A of this section relinquishes possession of the aircraft due to the acceptance or receipt of a check, draft or written order for payment of the indebtedness due on the aircraft, but the check, draft or written order for payment is returned because of insufficient funds, no account, closed account or issuance of a stop-payment order, or if possession is lost due to the illegal acts of the owner or his agent, the possessory lien on the aircraft shall continue for a period of thirty days from the date actual possession was relinquished or lost. At the expiration of the thirty days, the lien shall continue but shall be subordinate to prior recorded liens on the aircraft. . . .

. . . .

D. Any person entitled to a lien pursuant to Subsection A of this section shall, within ninety days after the date on which labor was last performed or materials, supplies or services [were] last furnished, file in the office of the county clerk of the county in which the aircraft is based, or where the labor was performed or materials, supplies or services [were] furnished, a statement verified by oath. The statement shall include the name of the person entitled to the lien, the name of the owner of the aircraft, a description of the aircraft, and the sum due for labor performed or materials, supplies or services furnished.

E. The lien perfected pursuant to Subsection D of this section may be enforced against the aircraft, whether or not in the possession of the lienholder, by judgment of the court having jurisdiction in the county where the lien is filed and a writ of execution pursuant to that judgment. . . .

these supplies, have a possessory lien under Section 48–3–29.

**13.** *A genuine issue of fact as to damages.* Only if there is no genuine dispute about whether all damages to Air Ruidoso resulted from its own conduct and whether the wrongful act of Executive Aviation in taking possession of the aircraft was but a mere underlying circumstance or condition and not a legal cause of any harm, could we then affirm the dismissal of the damages claim. In support of its motion, however, Executive Aviation did not dispel all reasonable inferences that Air Ruidoso was damaged by the loss of use of its aircraft. The summary judgment dismissing the damages claim was presented to and decided by the court on the grounds that Executive Aviation did nothing wrong in imposing a possessory lien on the aircraft. Since the court erred in recognizing any right of Executive Aviation to a possessory lien, the damages issue must be heard on its merits.

**14.** It is a well established principle in New Mexico that an injured party has a responsibility to mitigate its damages, or run the risk that any award of damages will be offset by the amount attributable to its own conduct. *Pillsbury v. Blumenthal,* 58 N.M. 422, 428, 272 P.2d 326, 330 (1954). It is certainly possible that Air Ruidoso's damages were significantly increased because of its own actions. It waited a full month following loss of its airplane before paying an admitted debt and regaining possession of the plane. Air Ruidoso failed to complete the procedures necessary to reinstate certification, and Executive Aviation alleges that the loss of the 401 certificate is due to various violations of FAA regulations by Air Ruidoso. Even if we assume all this to be true, however, it is not clear that Air Ruidoso did not suffer some damage because of the wrongful conduct of Executive Aviation. The FAA cited the lack of an airplane during late 1988 as a reason for revoking Air Ruidoso's certification, and Air Ruidoso submits that it had not, for short-term economic reasons, acquiesced in the shut down of operations. In an affidavit in opposition to the motion for summary judgment, the president of Air Ruidoso did state that immediately after the airplane was seized she informed Executive Aviation that she "had several reservations for the upcoming Thanksgiving weekend." Evidence to the contrary is reviewed in the next part of this opinion. However, the trial court's hearing under Rule 1–011, which apparently satisfied the court that the claim for loss of certification was knowingly without support, is nonetheless no substitute for a full evidentiary trial to establish recoverable damages.

**15.** *Rule 1–011 sanctions.* Rule 1–011 [3] allows a court to "exercise its discretion and impose sanctions for a willful violation of the rule when it finds, for example, that a pleading or other paper signed by an attorney is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose." *Rivera v. Brazos Lodge Corp.,* 111 N.M. 670, 674, 808 P.2d 955, 959 (1991). In New Mexico the good-grounds provision of Rule 1–011 is reviewed by a subjective standard. "Any violation depends on what the attorney or litigant knew and believed at the relevant time and involves the question of whether the litigant or attorney was aware that a particular pleading should not have been brought." *Rivera,* 111 N.M. at 675, 808 P.2d at 960. We review Rule 1–011 appeals on an abuse-of-discretion standard, overturning the decision of the trial court only when it "is contrary to logic and

---

**3.** The current rule states, in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed for delay. If a pleading, motion or other paper is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading or other paper had not been served. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. For a willful violation of this rule an attorney or party may be subjected to appropriate disciplinary or other action. Similar action may be taken if scandalous or indecent matter is inserted.

SCRA 1986, 1–011 (Repl.Pamp.1992).

reason." *Lowe v. Bloom,* 112 N.M. 203, 204, 813 P.2d 480, 481 (1991).

16. The trial court found that Air Ruidoso knew that it did not have good grounds for filing the amended complaint seeking damages attributable to loss of its certification as a commercial provider of commuter airline and air charter services. In a letter to the FAA, Air Ruidoso stated that since

> Air Ruidoso had virtually no bookings for the next month, management made the decision not to reclaim the aircraft until such time as economically adequate reservations could be re-established. In accordance with this policy, on December 19, 198[8], Air Ruidoso paid all outstanding fuel amounts and again took possession of its aircraft.

Executive Aviation has argued that this letter conclusively proves that Air Ruidoso is solely responsible for the length of time that it was without an aircraft, and that Air Ruidoso knew it. Because we are remanding for a full evidentiary trial on the merits of Air Ruidoso's claim for damages, however, we reverse the Rule 1–011 sanctions and order that the same be reconsidered in light of all the evidence, including any relationship the loss of certification may have had to the loss of possession, and Air Ruidoso's acquiescence in or objection to that short-term loss of use.

17. *Conclusion.* Finding that a material issue of fact exists as to whether Air Ruidoso was damaged by the wrongful possession of its airplane by Executive Aviation, we reverse the district court's grant of summary judgment. We also reverse the district court's award of Rule 1–011 sanctions against Air Ruidoso.

18. **IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., and JOHN W. POPE, District Judge, concur.